H. S. FAIRCHILD and another *vs.* CITY OF ST. PAUL.

July 17, 1891.

**Eminent Domain—Condemnation of Fee for Street.**—Where the use is a public one, the legislature is the exclusive judge of the amount of land, and of the estate therein, which the public end to be subserved requires to be taken. Hence it was competent for it to authorize the city of St. Paul to condemn the title in fee-simple of land for public streets.

**Same—Estate Acquired—Qualified Fee.**—But the title which the city acquires in such cases is what may be termed a "qualified or terminable fee" for street purposes only, and which it holds, not as proprietor, but as an agency of the state, in trust for the public for street purposes, and which it can neither sell nor devote to a private use.

**Same—Charter of St. Paul—Compensation Payable.**—The city charter contemplates that the measure of compensation shall be commensurable with the nature and extent of the estate taken, and hence is not repugnant to the constitutional prohibition against taking private property for a public use without compensation.

**Same—Local Improvement—Levy of Assessment.**—Where the fee of land is taken for street purposes, the compensation paid is a part of the cost of a "local improvement," for which "assessments" may be levied upon the property to be benefited.

**Same—Description of Land.**—The description of the land proposed to be, condemned in this case *held* sufficient.

**Same—Notice—Time.**—The time specified for the publication of any notice under the city charter commences with the first publication. Sp. Laws 1885, *c.* 7, § 20.

**Same — Charter of St. Paul — Notice of Meeting of Board of Public Works—Orders of Council to Board.**—If full 15 days' notice of the time and place of the meeting of the board of public works to make the assessment and award of benefits and damages is given before the meeting, and near enough to the date thereof to reasonably answer the purpose designed, it is sufficient, although the date of the first publication is more than 15 days before the meeting. Orders of the city council to the board of public works are merely directions to an executive department of the city government, and do not come within the provision of the charter requiring ordinances, resolutions, and by-laws to be published in the city paper before they shall take effect.

**Same—Benefits Equalling Damages—Notice before Taking Possession.** Where the "benefits" assessed are equal to the damages awarded, so that nothing is payable to the land-owner for the land taken for a local improvement, it is not necessary that the notice required by Mun. Code 1884, § 154, (Sp. Laws 1874, *c.* 1, *subc.* 7, § 18,) should be given before the city takes possession of the property condemned.

**Same—Official Newspaper—Designation.**—*Held, also,* that in this case there was a sufficient designation of the St. Paul Daily Globe as the official paper of the city.

Appeal by plaintiffs, H. S. Fairchild and Greenleaf Clark, from a judgment of the district court for Ramsey county, where the action (brought to recover $33,634.50 for quarrying and removing stone from plaintiffs' premises and for other trespasses thereon) was tried by *Kelly*, J.

*C. H. Benedict* and *S. Duffield Mitchell*, for appellants.

*Daniel W. Lawler* and *Hermon W. Phillips*, for respondent.

MITCHELL, J. This was an action to recover damages for certain alleged acts of trespass in removing stone from the premises of the plaintiffs. The defendant justified the acts on the ground that it had acquired the title to the land for the purposes of a public street. The case was tried upon the theory that its decision de-

pended on the question whether or not the city of St. Paul had acquired a title in fee, and by stipulation it was agreed that the court should determine two questions, viz.: *First*, had the defendant the power and right to condemn the fee of land for street purposes? and, if so, *second*, had the defendant duly condemned, for such purposes, the fee of the land in question?

1. The main contention of the plaintiffs upon the argument was, to use their own language, "that the public exigencies do not demand the taking and condemnation of the absolute fee-simple title to land, for the purpose of highways and streets; that the public wants are supplied by the enjoyment of an easement; and that any act of the legislature which assumes and attempts to authorize a municipality to take and condemn the absolute fee-simple title to land for such purposes is unconstitutional and void." More briefly stated, the proposition is that the legislature cannot authorize the taking of any greater estate in land for a public use than is necessary; that an estate in fee is not necessary for the purposes of a street; therefore the legislature cannot authorize the taking of such an estate for such purposes. While we have given the question the careful examination due to the elaborate brief and very earnest argument of the learned counsel, yet it has never seemed to us that there was anything in his contention. In this case it must be conceded that the legislature, if it had the power to do so, has given the city of St. Paul authority to condemn an estate in fee for street purposes; the language of the charter being: "In all cases the land taken and condemned in the manner aforesaid [for streets] shall be vested absolutely in the city of St. Paul in fee-simple." Mun. Code 1884, § 153, (Sp. Laws 1874, p. 59, § 17.) There is nothing better settled than that, the power of eminent domain being an incident of sovereignty, the time, manner, and occasion of its exercise are wholly in the control and discretion of the legislature, except as restrained by the constitution. It rests in the wisdom of the legislature to determine when and in what manner the public necessities require its exercise; and with the reasonableness of the exercise of that discretion the courts will not interfere. *Wilkin v. First Div., etc., R. Co.,* 16 Minn. 244, (271;) *Weir v. St. Paul, S. & T. F. R. Co.,* 18 Minn.

139, (155.)    As the legislature is the sole judge of the public necessity which requires or renders expedient the exercise of the power of eminent domain, so it is the exclusive judge of the amount of land, and of the estate in land, which the public end to be subserved requires shall be taken.    The only limitation—at least, the only one applicable to a case like the present—which the constitution imposes upon the exercise of the right of eminent domain by the legislature is that private property shall not be taken for public use without just compensation therefor first paid or secured.    Of course, there is the further limitation, necessarily implied, that the use shall be a public one; upon which question the determination of the legislature is not conclusive upon the courts.    But, when the use is public, the necessity or expediency of appropriating any particular property is not a subject of judicial cognizance.    Consequently, if in the legislative judgment it is expedient to do so, it has the power expressly to authorize a municipal corporation compulsorily to acquire the absolute fee-simple to lands of private persons condemned for street or any other public purpose.    The authorities are so numerous and uniform to this effect that an extended citation of them is unnecessary.    See, however, Dill. Mun. Corp. § 589; Cooley, Const. Lim. 688; Lewis, Em. Dom. 277; Elliott, Roads & S. 172; Mills, Em. Dom. §§ 50, 51; *Boom Co.* v. *Patterson,* 98 U. S. 403, 406; *Sweet* v. *Buffalo, etc., Ry. Co.,* 79 N. Y. 293, 299.

It is often laid down as the law that the taking of property must always be limited to the necessity of the case, and, consequently, no more can be appropriated in any instance than is needed for the particular use for which the appropriation is made.    But it will be found that this is almost invariably said, not in discussing the extent of the power of the legislature, but with reference to the construction of statutes granting authority to exercise the right of eminent domain, and where the authority to take a certain quantity of land or a particular estate therein depended, not upon an express grant of power to do so, but upon the existence of an alleged necessity, from which the disputed power is to be implied.    This distinction is clearly brought out by Justice Cornell in *Milwaukee & St. Paul Ry. Co.* v. *City of Faribault,* 23 Minn. 167.    Upon the principle

that statutes conferring compulsory powers to take private property are to be strictly construed, it follows that, when the estate or interest to be taken is not defined by the legislature, only such an estate or interest can be taken as is necessary to accomplish the purpose in view, and, when an easement is sufficient, no greater estate can be taken. It is on this principle that where the legislature has authorized the taking of land for the purposes of streets, without defining the estate that may be taken, or expressly authorizing the taking of the fee, it is held that only an easement can be taken. This is construed, under such statutes, to be the extent of the grant of authority; but no well-considered case can be found which holds that the legislature might not authorize the taking of the fee, if it deemed it expedient.

It is perhaps foreign to the present inquiry to consider the nature and extent of the title which the city of St. Paul acquires in land condemned for street purposes. But, notwithstanding the broad language used in the city charter, we think that it must be construed as only a qualified or terminable fee,—that is, the fee-simple for street purposes,—which gives the city absolute control over the land for those purposes, but that its title is not a proprietary, but what might be termed a sovereign or prerogative, one, which it, as an agency of the state, holds in trust for the public for street purposes, and which it can neither sell nor devote to a private use.

Counsel argues that the provision of the charter authorizing the taking of an estate in fee for street purposes is in conflict with the constitutional provisions that no one shall be deprived of his property without due process of law, or without compensation first paid or secured, and that all taxes shall be as nearly equal as may be, and all property on which taxes are to be levied shall have a cash valuation, etc. We confess that we have been unable to satisfactorily follow counsel's line of reasoning in support of these propositions; but, as we understand him, his position as to the first one is that, while an estate in fee is taken, only an easement is paid for. There is clearly nothing in this point; for the charter expressly provides that the board of public works "shall determine and appraise to the owner the value of the real estate appropriated for the improvements."

Under this, the measure of compensation must be commensurate with the nature and extent of the estate or interest of which the owner is deprived. If the fee is taken, the fee must be paid for. The point as to taxation seems to be that as assessments for benefits can only be made for local improvements, and as it is only necessary to take an easement in land for street purposes, therefore the taking the fee is not for a local improvement; consequently, if taken, no assessments can be levied to pay for it. This is begging the question, and reasoning in a circle. The legislature having authorized, as it might, the condemnation of the fee for the purpose of opening or widening a street, which is a local improvement, payment for the land taken in fee for that purpose is as much a part of the cost of the improvement as would have been payment for an easement, had that been the interest taken.

2. Some points are made against the validity of the condemnation proceedings under which the land in question was taken. One is that the land proposed to be condemned was not described with sufficient certainty in the notice of the meeting of the board of public works to make the assessment of benefits and damages. The notice is that the board will meet "to make an assessment of benefits and damages," etc., "arising from the opening, widening, and extension of James street from Oneida street to Western avenue, in said city. * * * The land necessary to be condemned and taken for said opening, widening, and extension is described as follows, to wit: All that land not already dedicated or condemned for public use lying within the lines of James street, produced east from Webster street to Western avenue, in the city of St. Paul." This is notice that the street is to be widened between Oneida street and Western avenue to such a width as will include all the land not already dedicated or condemned, lying within the lines of James street, produced east from Webster street to Western avenue. This is a sufficient description; for from it the land proposed to be taken could readily be ascertained by reference to the boundaries given, which would enable a surveyor to locate it on the ground. That is certain which can be made certain. The notice for Erie street is similar.

The provision (Sp. Laws 1885, *c.* 7, § 20) that the time specified
v.46M.—35

for the publication of any notice under the city charter shall commence with the first publication, fully covers the objection made to the length of the notice of the meeting to confirm the assessment.

It is also objected that the 15-days notice of the meeting to make the assessment and award of benefits and damages expired 2 days before the date of the meeting; the time between the date of the first publication and the date of the meeting being 17 days, and not exactly 15 days, as is claimed it should have been. The provision of the charter requiring that 15 days' notice of the meeting shall be given by three publications means that there shall be the full time specified from the date of the first publication to the time of hearing, but not that it shall be that exact number of days and no more. If the full 15-days' notice is given before the hearing, and sufficiently near the date thereof to reasonably answer the purpose designed to be effected, it fulfils the requirements of the statute.

Orders of the city council to the board of public works are merely directions to an executive department of the city to carry out such public improvements as the council shall determine to make, and do not come within either the letter or spirit of the provision of the charter requiring ordinances, resolutions, and by-laws to be published in the official paper before they shall take effect. This provision was designed for the information of the public, whose conduct is to be governed by such ordinances and by-laws.

It is further objected that it does not appear that notice was given that the money was collected, and in the hands of the city treasurer, to pay damages to persons awarded damages for property taken, which the city charter requires shall be given before the city shall have the right to enter upon or appropriate the land condemned. This was designed as a compliance with the constitutional requirement that private property shall not be taken for public use without compensation first paid or secured; and it is enough for present purposes to say that as no damages were awarded to the plaintiffs, the same being fully offset by benefits, they are in no position to make this objection. The omission, if any, cannot affect the validity of the condemnation of their property.

The only other objection to the condemnation proceedings requir-

ing consideration is that the notices of the meetings of the board of public works to make and to confirm the assessments were not published in a paper that had been properly designated as the official paper. The evidence shows that they were published in the "St. Paul Daily Globe" in 1886. It also appears that in January, 1878, the common council adopted a resolution designating the "St. Paul Globe" as the official paper of the city, and that they adopted a resolution, almost identical in language, each year thereafter down to and including the year 1886. Whether at the time of the original designation, in 1878, there was any other issue of the Globe than the daily, is not very clear from the evidence. The trial court seems to have found that there was not. If this was so, then, there being no other paper then known as the "St. Paul Globe," the designation in 1878 was sufficient; and if, as is claimed, all subsequent designations were invalid, the St. Paul Daily Globe would continue to be the official paper, no successor having been designated. Mun. Code 1884, p. 33, § 17, (Sp. Laws 1874, p. 28, § 18.) But waiving this point, it appears that either in 1878 or at some subsequent date the publishers commenced to issue a weekly edition of the paper, called the "Weekly Globe," or "St. Paul Weekly Globe," which was "fed" from the daily issues. The daily issue was published seven times a week. The weekly issue was published only once a week, and was circulated wholly in the country, and not in the city. It also appears that these were not considered separate papers, but merely different issues of the same paper; also, that in the city of St. Paul, where only the daily issue circulated, in the common understanding and talk of people, when the "Globe" or the "St. Paul Globe" was spoken of or mentioned, the daily issue was universally meant, and so understood by everybody. The plaintiffs claim that the case is controlled by the decision in *Russell* v. *Gilson,* 36 Minn. 366, (31 N. W. Rep. 692.) We are not now sure that the reasoning in that case was not rather technical and over-critical; but however that may be, we think that the facts in the two cases, as presented in the records, are fairly distinguishable. Considering that the main object of designating an official paper is to advise parties in what paper to look for notices affecting their property, it seems to us, in view of all the facts, that

any one examining the resolution of the city council would have readily understood what paper was referred to, and consequently that the designation fully satisfied the requirements of the charter.

Judgment affirmed.

NOTE. A motion for a reargument of this case was denied October 7, 1891.