## LOUISE BARMEL v. MINNEAPOLIS-SAINT PAUL SANITARY DISTRICT.[1]

January 14, 1938.

No. 31,471.

[1]Reported in 277 N. W. 208.

*Lewis L. Anderson,* for appellant.

*Oscar Hallam* and *Bruce J. Broady,* for respondent.

LORING, JUSTICE.

This is an appeal from a judgment on the pleadings in favor of the defendant, which in 1934 commenced proceedings in condemnation to take the plaintiff's 60-acre homestead in Ramsey county under the provisions of 1 Mason Minn. St. 1927, § 1552, *et seq.* (L. 1911, c. 185) sometimes known as the Elwell act, for use in connection with the purposes for which the sanitary district was authorized and organized. Commissioners were duly appointed and on February 1, 1935, reported and filed their award of $17,949 to the plaintiff for her land. This amount was more than twice the average yearly "true and full value" of such land as designated upon the tax rolls for the five-year period preceding 1935. February 8, 1935, seven days after the report of the commissioners was filed; L. 1935, c. 7, was approved, § 1 of which amended L. 1933, c. 341; § 14, and prohibited the defendant from acquiring any property by purchase or condemnation except in a court of competent jurisdiction for a price exceeding twice the average yearly true and full value of such land as designated upon the tax rolls for a five-year period preceding the year 1935. The Elwell act is not a proceeding in court and makes no provision for the condemnor to appeal to any court from the award of damages, such right being given to the landowner only. Thereupon the condemnor abandoned the proceedings under the Elwell act and initiated proceedings under 2 Mason Minn. St. 1927, c. 41 (§ 6537, *et seq.*), to acquire a tract of land which did not include the plaintiff's property. The plaintiff brought this suit to recover her expenses incurred in the proceedings under the Elwell act for engineers, expert witnesses, and lawyers in the total sum of $1,118.71 with interest. The issues were

made up and the trial court granted judgment for the defendant upon the pleadings.

The defendant is a public corporation organized under the provisions of L. 1933, c. 341, for the purpose of building a sewage disposal plant and system for St. Paul and Minneapolis, which under the provisions of that act constitute one sanitary district. By § 14 of the act the district was authorized to acquire property under the Elwell act.

The plaintiff bases her right to recover upon two grounds. She asserts that 2 Mason Minn. St. 1927, § 6552, which is part of c. 41, dealing with the exercise of eminent domain, applies to proceedings under the Elwell act, though under that act there is no specific provision by which the landowner is entitled to recover his expenses and attorney's fees upon a dismissal by the condemnor. Her second ground is in the nature of a charge of malicious prosecution of a civil suit, asserting that the district never really wanted the land, that it had no use for it, and was actuated by malice in bringing the proceedings.

■ To quote from the language of this court, speaking through Mr. Justice Mitchell in Fairchild v. City of St. Paul, 46 Minn. 540, 542, 49 N. W. 325:

"There is nothing better settled than that, the power of eminent domain being an incident of sovereignty, the time, manner, and occasion of its exercise are wholly in the control and discretion of the legislature, except as restrained by the constitution. It rests in the wisdom of the legislature to determine when and in what manner the public necessities require its exercise; and with the reasonableness of the exercise of that discretion the courts will not interfere."

Of course our constitution limits the right of eminent domain to the taking of private property for public use with just compensation therefor first paid or secured. The courts will review such proceedings to see that these constitutional requirements have been complied with, but beyond that we have no power to interfere with the exercise of what is purely a legislative function as distinguished

from a judicial one, although of course the legislature may do what it has done in c. 41 and use the court as an instrumentality in which to initiate the proceedings. This is not an unconstitutional delegation of its powers to the judicial branch. Weir v. St. P. S. & T. F. R. Co. 18 Minn. 139, 147 (155). It is not even necessary for the legislature to employ the court to determine what is adequate and fair compensation for the taking. It need only provide an impartial tribunal or instrumentality before which the landowner has ample opportunity to present his case. In State ex rel. Simpson v. Rapp, 39 Minn. 65, 67, 38 N. W. 926, 928, this court, again speaking through Mr. Justice Mitchell, used the following language:

"Condemnatory proceedings in the exercise of the right of eminent domain are not civil actions or causes within the meaning of the constitution, but special proceedings, only *quasi* judicial in their nature, whether conducted by judicial or non-judicial officers or tribunals. The propriety of the exercise of the right of eminent domain is a political or legislative, and not a judicial question. The manner of the exercise of this right is, except as to compensation, unrestricted by the constitution, and addresses itself to the legislature as a question of policy, propriety, or fitness, rather than of power. They are under no obligation to submit the question to a judicial tribunal, but may determine it themselves, or delegate it to a municipal corporation, to a commission, or to any other body or tribunal they see fit. Neither are they bound to submit the question of compensation incident to the exercise of the right of eminent domain to a judicial tribunal. Provided it be an impartial tribunal, and the property-owner has an opportunity to be heard before it, the legislature may refer the matter for determination to a jury, a court, a commission, or any other body it may designate."

By the terms of the Elwell act, the legislature did not use the court as the instrumentality by which damages for the taking were primarily determined, but created a board or commission to perform that function, providing for an appeal to the district court only on the part of the landowner or by either party from that court to the supreme court. The whole proceeding was entirely

distinct from a proceeding under c. 41, and, as before stated, made no provision creating a cause of action in favor of the landowner for his expenses upon a dismissal by the petitioner. By its terms, the act applied only to a certain limited class of municipalities and for limited purposes. The legislature did not consider it wise or just in such proceedings to create such a cause of action as the plaintiff here asserts. At common law or in the absence of statute, no cause of action arose in favor of the landowner when a condemnation proceeding was dismissed. McRostie v. City of Owatonna, 152 Minn. 63, 67, 188 N. W. 52. Apparently, the right of a landowner to recover expenses in the event condemnation proceedings were abandoned or dismissed, first arose in this state under the provisions of L. 1874, c. 28, § 5, relating to condemnation proceedings by railroad companies. That provision appears as G. S. 1878, c. 34, § 31, and relates to such public service corporations as railway, telegraph, and canal companies, which may be organized under that title. The provision appears again in G. S. 1894, c. 34, § 2655. The revision of 1905 incorporated c. 41 on eminent domain and apparently sought to simplify and harmonize existing provisions, but in the very first section of that chapter exceptions were made to the application of its provisions. By that chapter, the legislature in great measure adopted the district court as the instrumentality through which it would exercise its right of eminent domain by condemnation proceedings. By the very terms of § 6537, which is the first section of the chapter, it confined the provisions of the chapter to those proceedings which are prescribed by the chapter, and it specifically states that nothing in the chapter shall apply to condemnation under city charters or laws relating to roads and drainage where such laws themselves expressly provide for the taking and prescribe the procedure connected therewith. The Elwell act did not at that time exist, and when it was enacted it prescribed a complete procedure for the limited cases to which it applies. We are therefore of the opinion that there was no intention on the part of the legislature to make c. 41, § 6552, apply to any other proceedings than those taken under that chapter. In McRostie v. City of Owatonna, 152 Minn. 63, 188 N. W. 52, it was definitely held that

the provision which is now § 6552 did not apply to a proceeding under a city charter. A city charter is no more distinct from c. 41 than is the subsequently passed Elwell act, which in effect but supplements the charter provisions of the cities to which it applies. In the case of State ex rel. Benson v. Lesslie, 195 Minn. 408, 263 N. W. 295, a proceeding under c. 41, the only question before us was whether or not § 6552 applied where the state was petitioner, and what was said in that case was applicable only to the question there presented. In County of Blue Earth v. Williams, 196 Minn. 501, 265 N. W. 329, a judicial road proceeding, the applicability of § 6552 outside of c. 41 was not argued. It was cited in respondent's brief and its applicability assumed by respondent, but what was there said by us relating to § 6552 was said *arguendo* and without intent to decide the question here presented. We hold that § 6552 applies only to proceedings under c. 41.

■ We come now to the question of whether or not the sanitary district as such may be liable for malicious prosecution of condemnation proceedings. In our opinion, there are two reasons why it may not be so liable. So far in our jurisprudence malicious prosecution has arisen only because of a criminal prosecution or a civil action. A condemnation proceeding is neither. State ex rel. Simpson v. Rapp, 39 Minn. 65, 38 N. W. 926. Further, in such proceedings the district is discharging a sovereign legislative power, and in the exercise of such a power the court may not inquire into its motives any more than it could inquire into the motives of the legislature if that body were itself exercising its right of eminent domain. A public corporation of this character is an arm of the state, and while engaged in the performance of sovereign legislative functions conferred upon it by the legislature is not liable in tort, Mokovich v. Independent Sch. Dist. 177 Minn. 446, 448, 449, 225 N. W. 292. St. John v. City of St. Paul, 179 Minn. 12, 228 N. W. 170. In Roerig v. Houghton, 144 Minn. 231, 233, 175 N. W. 542, 543, this court, speaking through Commissioner Lees, said:

"It is well settled that a municipal corporation cannot be held in damages for the manner in which it exercises its discretionary

powers of a public, legislative or quasi-judicial nature. While engaged in the discharge of duties imposed upon it, from the performance of which it derives no compensation or benefit in its corporate capacity, it is clothed with the immunities of the state."

The presence or absence of malice on the part of its officers is immaterial. The courts may not inquire into the motives behind the strictly sovereign acts here involved. It is true that in Claussen v. City of Luverne, 103 Minn. 491, 115 N. W. 643, 15 L.R.A.(N.S.) 698, 14 Ann. Cas. 673, Mr. Justice Jaggard, speaking for this court, quoted from the case of City of Chicago v. Seben, 165 Ill. 371, 46 N. E. 244, 56 A. S. R. 245, in which that court appeared to consider good faith in the exercise of governmental functions as an element in its defense to liability, but in the Luverne case the question under consideration was whether the council acted in its public capacity, and in the opinion the case of Lerch v. City of Duluth, 88 Minn. 295, 301, 92 N. W. 1116, 1117, is cited with approval, where this court speaking of an arbitrary resolution revoking a permit said that "against the city itself such an action would not lie, any more than for an unauthorized arrest by a police officer or other ultra vires act of one of its servants." In the Luverne case, malice or the lack of it does not seem to have been considered as an element of the city's defense. In Bergman v. St. P. S. & T. F. R. Co. 21 Minn. 533, the question of whether the defendant was liable in tort was not before the court, and the case was against a private corporation having the power of eminent domain conferred upon it by the legislature.

The plaintiff's remedy, if any, lies in an application to the grace of that branch of the state government whose sovereign functions were being discharged by the district.

The judgment is affirmed.