## MINNEAPOLIS BOARD OF PARK COMMISSIONERS v. VINCENT JOHNSON AND ANOTHER.

144 N. W. (2d) 770.

August 5, 1966—No. 40,365.

*Edward J. Gearty,* for appellant.

*Frank X. Cronan* and *Carroll, Cronan, Roth & Austin,* for respondents.

FRANK T. GALLAGHER, C.

This is an appeal from a judgment of the district court.

On January 17, 1962, the appellant, Minneapolis Board of Park Commissioners, hereinafter referred to as the board, by resolution sought to acquire certain lands belonging to Vincent Johnson and Ethelyn Johnson, his wife, by condemnation proceedings under the authority of Minneapolis City Charter, c. 16, § 3. The land involved is described as Lots 3, 4, 5, 20, 21, 22, 23, and 24, Block 1, Groveland Avenue Rearrangement, City of Minneapolis (consisting of approximately 3 acres across from the Guthrie Theatre).

The five commissioners appointed by the board to appraise the prop-

erty filed their report and awarded the Johnsons $150,000 on November 1, 1963. Within the time prescribed by the charter, the Johnsons objected to the award. The board confirmed the award on February 19, 1964. As a result, the Johnsons appealed to the District Court of Hennepin County on February 24, 1964, as provided for in the charter.

On April 3, 1964, the court issued an order confirming the actions taken to that date and appointing three appraisers who filed their report and award of $455,726 on June 25, 1964. On July 15, 1964, pursuant to the charter, the board abandoned the proceedings in so far as they referred to respondents' lots.[1] The following day the court approved and adopted the report of the commissioners and awarded the Johnsons $455,726.

The record does not contain a motion to dismiss the appeal or to vacate the award, but since the parties attach no significance to this, we will assume that the order next mentioned had the effect of terminating the appeal and annulling the award.

On January 25, 1965, in response to the Johnsons' motion for costs and disbursements, the trial court found that the action of the board deprived the Johnsons of the use and dominion of the property from March 8, 1961, the day that the Johnsons' attorney received a letter from the City Planning Director advising that the Johnsons' petition for rezoning would not be considered because he had been informed that the property was required by the board for park purposes. The district court awarded the Johnsons $6,501.49 for real estate taxes paid by them from 1961 to July 16, 1964, and $16,189.68 as "interest on the award of $455,726.00 at the rate of 5 per cent from November 1st, 1963 [the date of the original commissioners' award], to July

---

[1] Minneapolis City Charter, c. 16, § 3, par. 11, provides in part: "The Board of Park Commissioners shall have the right at any time during the pendency of any proceedings for the acquisition of lands for any improvement authorized by this Chapter, or at any time within sixty (60) days after the final order by the court, of all appeals taken in such proceedings *to abandon all such proceedings* in respect to the whole improvement *or any part thereof,* whenever they shall deem it for the best interest of the city so to do." (Italics supplied.)

17th, 1964 [the date the Johnsons were notified of the abandonment]." After allowing fees and mileage for the commissioners, the court found that the board and the Johnsons "shall each bear the expense of their own attorneys' fees and other expenses in this action." It ordered judgment for $22,691.17.

The board questions whether the court could make findings of fact when it claims no evidence was introduced to support them. It also contends—and we think this the real issue—that the court erred in assessing interest on the award and in ordering reimbursement of the real estate taxes when the condemnation proceedings had been abandoned prior to the confirmation of the award and the property was never acquired by the city. The court and both parties cite Pettingill Theatre Co. v. City of Minneapolis, 256 Minn. 266, 98 N. W. (2d) 207, as controlling.

We reverse the award of interest and reimbursement for taxes because the question of the condemnor's liability, if any, for these consequential damages resulting from the institution and pendency of condemnation proceedings cannot properly be litigated in these proceedings once they are abandoned.

The Pettingill case is not applicable. While that case decided questions relating to the propriety of an award of interest and reimbursement for real estate taxes for the period following the original award of commissioners appointed by a city council, it has no relevance here because it involved condemnation proceedings that were not abandoned but were carried to completion by acquisition of actual title and possession. The Pettingill case recognized that a landowner may be damaged by the mere pendency of condemnation proceedings, but it did not establish a cause of action for the recovery of damages in the absence of the complete acquisition of the property and it did not authorize the assertion of such a cause of action in an abandoned proceeding.

The case applicable to the present situation, instead, is In re Widening East Franklin Avenue, 240 Minn. 32, 60 N. W. (2d) 23. There, condemnation proceedings by the Minneapolis city council under the city's charter were abandoned as to a portion of the affected property

after an appeal had been taken to the district court. The property owners, objecting to the right of the city to abandon, opposed its motion to dismiss the appeal and sought damages for loss of access resulting from the city's use of abutting property that was acquired. This court, reviewing a charter provision giving the council power to abandon condemnation proceedings in terms similar to the provision now before the court, said (240 Minn. 35, 60 N. W. [2d] 25):

"We believe that this charter provision must be construed to mean that the city has the right in a condemnation proceeding to abandon within the time specified the condemnation of any land included therein. Having such right, the landowner must thereafter proceed in a suit for consequential damages in the same manner as if the land had not been included in the first instance. We see no reason why the city should be compelled to determine damages in a condemnation proceeding when it has been abandoned any more than it would be compelled by mandamus to condemn the property if damages resulted where the city did not institute condemnation proceedings at all. We believe that this issue of the case is governed by Collins v. Village of Richfield, 238 Minn. 87, 55 N. W. (2d) 628, *supra*."[2]

The Collins decision involved a petition for mandamus to compel the village to institute condemnation proceedings for the assessment of consequential damages to abutting property resulting from a change of grade in a street. We held that mandamus would not lie because the petitioners had an adequate remedy at law in the form of an action for damages under Minn. Const. art. 1, § 13, for the injury to their property caused by the change of grade.

The procedure for asserting a claim for consequential damages resulting from the pendency of condemnation proceedings which are abandoned before completion is to be distinguished from the procedure for recovering costs and disbursements after the discontinuance of the proceeding. In McRostie v. City of Owatonna, 152 Minn. 63, 188 N. W. 52, and State, by Burnquist, v. Miller Home Development, Inc.

---

[2] See, also, Johnson v. Climax Molybdenum Co. 109 Colo. 308, 124 P. (2d) 929, and 30 C. J. S., Eminent Domain, §§ 337 and 339.

243 Minn. 1, 65 N. W. (2d) 900, 50 A. L. R. (2d) 1377, this court held that where the recovery of costs and disbursements or expenses in defending an abandoned condemnation proceeding is authorized by charter or statute, a claim for them may be asserted within the abandoned proceeding rather than in a separate action. Those cases are not relevant here because (1) the consequential damages claimed are not properly described as "costs and disbursements,"[3] and (2) there is no charter or statutory provision authorizing the recovery of "costs and disbursements" in this case.[4]

Although this disposes of the present appeal, we think it fitting, in view of the trial court's decision on the merits, to make these observations regarding the liability of a condemnor upon abandonment of condemnation proceedings for damages caused by their pendency. In doing so, we do not decide the questions raised, but merely point out their existence.

(1) The mere fact that a landowner is injured by the institution of condemnation proceedings does not render the condemnor liable for damages. There must be some legal basis for a cause of action. This statement of the majority and nearly unanimous rule appears in 6 Nichols, Eminent Domain (3 ed.) § 26.45:

"When condemnation proceedings are discontinued, even when there has been no disturbance of the actual occupancy of the land, the owner often suffers pecuniary loss during the pendency of the proceedings. It is difficult to find tenants and unsafe to build on the land. He may stop work on a partly constructed building or adapt it to the proposed improvement. He is almost certain to have incurred an attorney's. fee. But

---

[3] See, McRostie v. City of Owatonna, 152 Minn. 63, 188 N. W. 52.

[4] The Minneapolis charter is silent on this subject. Minn. St. 117.16, providing for "costs and expenses including fees of counsel" on discontinuance of a proceeding instituted under the statute, is not applicable to a proceeding instituted under a municipal charter. In re Widening East Franklin Avenue, 240 Minn. 32, 60 N. W. (2d) 23; Barmel v. Minneapolis-St. Paul Sanitary Dist. 201 Minn. 622, 277 N. W. 208; McRostie v. City of Owatonna, *supra*.

it is held, in the absence of bad faith or unreasonable delay upon the part of the party which instituted the proceedings, that the owner is not constitutionally entitled to recover such expenses and losses, and, when the statutes are silent on the subject, no damages will be awarded him. The inception of condemnation proceedings does not impose any legal restrictions on the land; the owner can sell it, and he is entitled to compensation for buildings or crops started with knowledge of the situation. The uncertainty caused by the probability that the proceedings will be carried through and the proposed work constructed over his land differs in degree only from that shared by owners of all property, which may at any time be taken by eminent domain whenever it may chance to lie in the path of a public improvement, and the decrease in income or other loss he may suffer from such uncertainty is held to be *damnum absque injuria*."[5]

The decisions of this court are generally in accord with this statement of the law, holding that in the absence of specific statutory or charter authorization, or of a showing of bad faith or unreasonable delay on the part of the condemnor, a condemnor is not liable, upon the abandonment of eminent domain proceedings, for the condemnee's costs and disbursements, attorney's fees, expenses, or losses.[6]

(2) Without deciding the validity of either, we perceive only two possible theories upon which the Johnsons can base a claim for damages. As has been noted,[7] there is no charter or statute authorizing recovery in this situation. The only theories remaining are (a) that the property was "taken, destroyed or damaged for public use" by the

---

[5] For exhaustive collections of cases on this subject, see Annotations, 31 A. L. R. 352 and 92 A. L. R. (2d) 355.

[6] See, Bergman v. St. Paul, S. & T. F. R. Co. 21 Minn. 533; Minneapolis & N. W. R. Co. v. Woodworth, 32 Minn. 452, 21 N. W. 476; McRostie v. City of Owatonna, 152 Minn. 63, 188 N. W. 52; State, by Benson, v. Lesslie, 195 Minn. 408, 263 N. W. 295; Minneapolis-St. Paul Sanitary Dist. v. Fitzpatrick, 197 Minn. 275, 266 N. W. 848; Barmel v. Minneapolis-St. Paul Sanitary Dist. 201 Minn. 622, 277 N. W. 208; In re Widening East Franklin Avenue, 240 Minn. 32, 60 N. W. (2d) 23.

[7] See footnote 4.

mere institution of the proceedings [8] and thus that compensation for the injury is required by Minn. Const. art. 1, § 13; or (b) that the action of the board was taken in bad faith or with unreasonable delay. Since employment of the latter theory would result in a tort action in the nature of one for malicious prosecution, the problem of the immunity of a municipal corporation from tort liability would be present and require analysis.[9]

The tort theory also faces the problem of the notice and limitation-of-action periods prescribed by Minn. St. 466.05 for tort claims against a municipality. However, since the trial court entertained the present claim on motion with no objection having been made by the municipality, we view these limitations as having been tolled until the filing of this decision.

(3) If the condemnee is able to prevail on either theory, the measure of damages will not be, as here applied, a percentage of the assessed reasonable value of the property. Such a measure presumes a total loss of the property for the computation period. Instead, the measure would be the actual loss proximately caused by the pendency of the proceedings as shown by evidence.

Reversed.

---

[8] But see, Duluth Transfer Ry. Co. v. N. P. R. Co. 51 Minn. 218, 53 N. W. 366, and 2 Nichols, Eminent Domain (3 ed.) § 6.38, et seq.

[9] See, Barmel v. Minneapolis-St. Paul Sanitary Dist. 201 Minn. 622, 277 N. W. 208; Spanel v. Mounds View School Dist. No. 621, 264 Minn. 279, 118 N. W. (2d) 795; Minn. St. 466.01, et seq.