## FAYETTE D. KENDRICK v. CITY OF ST. PAUL AND ANOTHER.[1]

November 20, 1942.

No. 33,318.

*R. Edison Barr,* for appellant.

[1]Reported in 6 N. W. (2d) 449.

*Harry W. Oehler,* Corporation Counsel, and *Marshall F. Hurley,* Assistant Corporation Counsel, for respondents.

STREISSGUTH, JUSTICE.

Action under the declaratory judgments act to determine adverse claims to a small tract of land in defendant city and for injunctive relief. Stripped of its legal trappings, it is in reality an assault upon a small beauty spot in our capital city. The trial court found that the city had fee simple title to the tract in trust for the public and denied plaintiff all relief. The appeal is from an order denying plaintiff's motion for a new trial.

The parcel involved is a small triangular "leftover" or remnant of two lots taken by the city in eminent domain proceedings instituted August 8, 1930, to widen Eighth and Sibley streets so as to provide a diagonal connection between Seventh and Eighth streets. The condemnation proceedings were in all respects regular. They were completed on December 30, 1930, by the adoption of a resolution by the city council confirming and ratifying the condemnation and the award of damages and by payment of the award to the Theo. Hamm Brewing Company, the then owner in fee simple of the lots involved. On the same day the brewing company delivered to the city its warranty deed with full covenants conveying the tracts so owned by it to the city. The full lots were not necessary for the improvement of the street proper, with the result that the triangular parcel here involved was left over as a small remnant lying outside of, but immediately adjacent to, the sidewalk line as established.

As a part of the city's plan, the southerly 12 feet of the triangular remnant were improved as an alleyway. The balance, with other like remnants, was, by resolution of the city council dated July 2, 1931, turned over to the commissioner of parks, playgrounds, and public buildings to be maintained as a "public boulevard area."

Shortly thereafter defendant Topel, a commercial florist, whose retail establishment faced Sibley street and bordered the south line

of the tract, obtained permission from the city council to improve the triangle as a "public boulevard area." He thereupon constructed an ornamental iron fence around the entire parcel with gates opposite each end of the alleyway which he kept locked at night. He then landscaped the triangle (exclusive of alleyway) by building thereon a small but impressive rock garden, which he maintained at all times thereafter, all without expense to the city.

Plaintiff owns 175 feet of Eighth street frontage immediately west of and adjoining the triangular tract. Being commercially rather than aesthetically inclined, he negotiated with the city in September 1940 to purchase its interest in the tract, at the same time petitioning the city to vacate the tract so that he might use it in conjunction with his adjoining property. Plaintiff's offer to purchase was declined and his petition denied. He thereupon conceived his present strategic plan of challenging the city's right to use the triangle as a rock garden. He procured a quitclaim deed from the United Properties Incorporated, an adjunct and grantee of the Hamm Brewing Company, thereby acquiring whatever title these corporations might still have to the property, and shortly thereafter commenced this action to contest the title of the city to the tract.

Plaintiff urges: (1) That by its condemnation proceedings the city took merely an easement in the lands condemned, limited to the use of the tract for street purposes only, which, he insists, did not include the use of the land for boulevard or rock garden purposes; (2) that any rights which the city may have acquired by condemnation have been abandoned by it under the doctrine of nonuser; (3) that the "boulevard" resolution did not authorize the use of a tract outside the limits of the street proper for rock garden purposes; and (4) that the deed from the Hamm Brewing Company to the city amounted only to a receipt for the award money and did not enlarge the title acquired by the city through the condemnation proceedings.

In our consideration of these contentions, the last shall come first. The effect of the city's taking more property than was

necessary for the precise narrow purpose of the street improvement, using the excess for beautification purposes, is an interesting question (see Young, "City Planning and Restrictions on the Use of Property," 9 Minn. L. Rev. pp. 518, 531), but purely academic so far as this court is concerned, because here the city does not rest its case solely upon the easement acquired by it in the condemnation proceedings but upon the title acquired by it by warranty deed from the original owner.

Section 1 of the city charter of St. Paul authorizes it to "take, hold and purchase, lease and convey such real and personal or mixed estate as the purposes of the corporation may require."

Section 233 provides that the city, by and through its council, is—

"vested with and authorized and empowered to exercise the following powers:

"(1) From time to time, to acquire for present or future public use by *purchase,* gift, devise *or condemnation* any and all *lands or easements* therein for the following public uses and purposes:

"(a) For *parks,* public playgrounds, *parkways and boulevards;* * * * for opening, widening, extending, straightening and altering any street, lane, alley, boulevard, parkway or other public thoroughfare or highway; * * * and *for any other public purpose or use.*

"(b) For easements in, over, under and across the property of persons and corporations, for streets, bridges, approaches, culverts, viaducts, ditches, sewers, wires, mains and conduits and other public purposes and uses." (Italics supplied.)

Here the city does not claim to have acquired more than an easement by the 1930 condemnation proceedings. The question, then, is whether the deed from the owner of the fee to the city had the effect of enlarging its easement to a fee simple title.

The deed which the city received from the Hamm Brewing Company at the time of the payment of the award was a general warranty deed containing no qualification, reservation, or limitation. On its face, it conveyed the absolute fee simple title to the tract in dispute and other lands, and no attempt has ever been made

by the grantor or its assigns to have the deed reformed so as to convey anything less than an absolute fee simple title. Without such reformation, neither the original grantor nor his assign can now assert that the deed was intended merely as a confirmation of the easement acquired by condemnation or as a receipt for damages. The effect of the deed is to be determined by the law of conveyancing and not by the law of condemnation. Lawton v. Joesting, 96 Minn. 163, 104 N. W. 830; Sanborn v. Van Duyne, 90 Minn. 215, 96 N. W. 41; City of Atlanta v. Jones, 135 Ga. 376, 69 S. E. 571; Struve v. Republican Valley R. Co. 2 Neb. (Unof.) 585, 89 N. W. 604; U. S. v. Certain Land in Falls TP., Bucks County, Pa. (3 Cir.) 38 F. (2d) 109.

In the case last cited the court said (38 F. [2d] 110):

"When one taking lands through the power of eminent domain in Pennsylvania wishes to enlarge his title from that of a base fee to a fee simple, he does so, and can only do so, by taking a conveyance of the land in the usual form. Under such a conveyance, he has title to the land whether the condemnation use is abandoned or not."

In Lawton v. Joesting and Sanborn v. Van Duyne, *supra,* deeds conveying "a perpetual easement for the purpose of a public levee" were taken by the city of St. Paul after condemnation proceedings proved irregular. The deed in each case was construed as conveying an easement only and not a fee, because, as the court said in the Lawton case (96 Minn. 168, 104 N. W. 832), "the language of the deed * * * does not * * * disclose an intention to grant to the city any greater right or title" than an easement. Here, however, the conveyance was in the form of a warranty deed without limitation or condition; and, in the absence of any language indicating that the conveyance of an easement only was intended, we cannot so construe the deed.

Plaintiff, in arguing to the contrary, relies upon certain language in Dow-Arneson Co. v. City of St. Paul, 191 Minn. 28, 31, 253 N. W. 6, 7, wherein it is said, relative to a deed taken after condemnation proceedings were regularly completed:

"The fact that the city took a deed when its condemnation proceedings had culminated did not change the fact that title passed to it under the condemnation. *It might fortify itself with the deed without in any way forfeiting what had been acquired by the proceedings,* the legality of which is not seriously questioned. Nor does the fact that it presented the deed for registration defeat *the law which declares title to vest in it upon payment of the award.* L. 1921, c. 219, § 1." (Italics supplied.)

From this plaintiff argues that if the title passed upon payment of the award and could not be forfeited by the city's subsequently taking a deed, such deed could not add anything to the title originally acquired by condemnation. But this is clearly a fallacy; "something new has," in fact, "been added." To "fortify" means to add strength, and what the court clearly meant by the language used was that the condemnor, by taking a deed, added something to the easement passing to it under the condemnation, something which strengthens, rather than merely sustains, its easement by the addition of whatever equity or reversionary interest the original owner still retains. Clearly, the court did not intend to say that, having once acquired an easement by condemnation, the city could not thereafter enlarge this title to one of fee simple. In fact, it indicated just the contrary.

Our conclusion that the city, by taking the warranty deed, acquired a fee simple title does not mean that this title was an absolute or proprietary one which could not thereafter be lost or relinquished by abandonment of all public use. The title which the city so acquired was a qualified or terminable fee, a sovereign or prerogative title, which it, as an agency of the state, holds in trust for the city and which it can neither sell nor devote to a private use. Fairchild v. City of St. Paul, 46 Minn. 540, 49 N. W. 325; Lawton v. Joesting, 96 Minn. 163, 104 N. W. 830. Here, however, there has been no abandonment of the public use, but, on the contrary, the construction of a beautiful rock garden built shortly after the condemnation and maintained continuously ever since by a public-spirited citizen, all without expense to the city.

We are not particularly concerned with the question whether or not the rock garden was a "boulevard" in the narrow sense of being a public thoroughfare.[2] If not a boulevard, it certainly was a "park," though diminutive in size, within the meaning of the word "park" in § 233 of the St. Paul city charter authorizing the city "to acquire for present or future public use by purchase, * * * any and all lands * * * for *parks,* public playgrounds, parkways and boulevards."

The trial court correctly held that there was no merit in any of plaintiff's attacks upon the city's title. Its order should therefore be affirmed.

So ordered.

[1]Reported in 6 N. W. (2d) 466.

[2]"The name [boulevard] is now sometimes extended to * * * a street which is of especial width, is given a parklike appearance by reserving spaces at the sides or center for shade trees, flowers, seats, and the like." Century Dictionary (Rev. ed.); 5 Wd. & Phr. (Perm. ed.) p. 726.