20 N.J. Super. 454 (1952)
90 A.2d 143
ALTA VALENTINE, PLAINTIFF,
v.
LESTER LAMONT AND MARION LAMONT, HIS WIFE, DEFENDANTS AND THIRD PARTY PLAINTIFFS,
v.
BOARD OF EDUCATION OF THE CITY OF JERSEY CITY, HUDSON COUNTY, A BODY CORPORATE, THIRD-PARTY DEFENDANT,
v.
ANTHONY J. LAMONT, INTERVENER.
Superior Court of New Jersey, Law Division.
Argued June 6, 1952.
Decided June 6, 1952.
*456 Mr. Louis G. Morten, attorney for the plaintiff.
Mr. Theodore Rabinowitz, attorney for the defendants and third party plaintiffs.
Mr. Robert H. Doherty, attorney for the third party defendant.
Mr. Edmund S. Johnson, attorney for the intervener.
JOSEPH L. SMITH, J.S.C.
This case is submitted to the court under the rules, a jury having been waived. It is an action for possession of land, under Rule 3:74-1.
Plaintiff, Alta Valentine, brings her action against the defendants, Lester Lamont and Marion Lamont, his wife, for possession of the premises located at No. 15 Dick Street, Jersey City. Defendants, Lester Lamont and Marion Lamont, moved for leave to make the Board of Education of Jersey City a party to this action. Application was also made for an order permitting Anthony J. Lamont, the holder of a first mortgage on the premises in question, to intervene. *457 Leave was granted making the said board a party and the said Anthony J. Lamont a party as intervener.
The court finds the facts to be substantially as set forth in the pretrial order. The facts therein contained are not supplemented by any oral testimony or any further exhibits, all the exhibits having been referred to in said order.
In chronological order, the events are as follows:
(1) February 28, 1890. Emma Maslin received title to lands known as No. 15 Dick Street, Jersey City, N.J., by deed dated February 28, 1890, recorded in Book 500 of Deeds, Hudson County Register's Office, page 32.
(2) July 19, 1922. The Board of Education of the City of Jersey City instituted condemnation proceedings in the Circuit Court of Hudson County, under L. 1900, c. 53, page 79, to acquire and take said land for the enlargement of School No. 11 in said city. The said Emma Maslin was a party in this proceeding.
(3) The said Emma Maslin was awarded the sum of $13,600 for the taking of her lands for said enlargement of School No. 11 and the said amount of $13,600 was paid to her.
(4) May 27, 1928, said Emma Maslin died intestate, a widow. Her only surviving heir was Mary L. Stinard. Said Mary L. Stindard died intestate January 22, 1934, leaving three surviving heirs: Percy L. Stinard, a son; Alta Valentine, the plaintiff, a granddaughter; and Rutherford L. Stinard, a grandson.
(5) Percy L. Stinard has not been heard from in seven years and his whereabouts or existence are unknown. Rutherford L. Stinard, the grandson, resides in New York.
(6) September 6, 1945. The Board of Education of Jersey City adopted a resolution wherein it was recognized that the lands in question were no longer needed for school purposes and provided that a public sale be held under R.S. 18:5-25 and R.S. 18:5-26.
(7) March 21, 1946. Said board, by resolution, ratified the public sale on March 14, 1946, of said premises to the defendants, Lester A. Lamont and Marion Lamont, his wife.
*458 (8) By deed, dated April 9, 1946, said board conveyed premises in question to defendants, Lester Lamont and Marion Lamont, and the said deed is duly recorded. This was by bargain and sale deed, confirmatory of the public sale aforesaid.
On January 14, 1952, the plaintiff filed a complaint in the present suit.
It is unnecessary in this case to enter upon any lengthy discussion of the ancient right of eminent domain. It is generally conceded that it is an attribute of sovereignty and belongs to the state, and to the state alone. It exists independent of constitutional mandate, and it existed long prior to any known constitution. It is, however, a dormant right lodged in the sovereign people until legislative action points out the occasions, the modes, and the agencies for its exercise. Lazarus v. Morris, 212 Pa. 128, 61 A. 815 (Sup. Ct. 1905).
The right of an individual to the ownership of property must, of necessity, bend to the requirements of public use and so the right of eminent domain had its origin, but no right to take private property for a private use has ever existed. The use must be a public use, and the Constitutions, both State and Federal, support this, and have added further the limitation that private property may not be taken even for a public use without just compensation. United State Constitution, Fifth Amendment; New Jersey Constitution, 1947, Art. IV. sec. VI, par. 3.
Having in mind that private ownership of property must give way to a definite public need or a desire to subject that property to a public use, but never forgetting for an instant that the right to own and to retain property is one of the most cherished and sacred rights of a free man, obtained at a cost of centuries of toil, bloodshed and strife, the courts have rather uniformly considered that statutes providing the right of eminent domain should be strictly construed. Manda v. Orange, 75 N.J.L. 251 (Sup. Ct. 1907); Clark v. Coburn, 108 Me. 26, 78 A. 1107 (Sup. Ct. 1911); Conners v. New *459 Haven, 101 Conn. 191, 125 A. 375 (Sup. Ct. 1924); Reed v. Winona, 100 Minn. 167, 110 N.W. 1119 (Sup. Ct. Minn. 1907); Smith v. Minneapolis, 112 Minn. 446, 128 N.W. 819 (Sup. Ct. Minn. 1910); People ex rel. Washburn v. Gloversville, 128 App. Div. 44, 112 N.Y.S. 387 (App. Div. 1908).
It is a well established rule in New Jersey that the quality of interest in land obtained by a municipality under the power of eminent domain is that which the statute conferring the power authorizes the municipality to acquire. I mean to say that the Eminent Domain Act empowers the various agencies to take all the right, title and interest of the owner if necessary, otherwise only so much of the right, title and interest as may be necessary to the public use authorized by statute. Summerill v. Hunt, 25 N.J. Misc. 498, 55 A.2d 833 (Sup. Ct. 1947); Carroll v. Newark, 108 N.J.L. 323 (E. & A. 1932); Frelinghuysen v. State Highway Comm., 107 N.J.L. 218, affirmed 108 N.J.L. 403 (E. & A. 1932); Wolf v. State Highway Comm., 10 N.J. Misc. 317 (Sup. Ct. 1932).
In this State, it has been held that even the Legislature without express authority from the Constitution cannot enact legislation which would change easements acquired by condemnation proceedings, into a fee simple absolute. Holcombe v. Western Union, 109 N.J.L. 551 (E. & A. 1932); L. 1930, c.c. 191, 241.
It is rather interesting to note that express authority for the taking of a fee simple absolute has been absent from the prior 1844 New Jersey Constitution, but that the 1947 Constitution does state that any agency or political subdivision "may be authorized by law to take or otherwise acquire a fee simple absolute or any lesser interest." New Jersey Constitution of 1947, Art. IV, sec. VI, par. 3.
This express authorization, it seems to this court, was placed therein to clarify a situation which has plagued our courts, and the courts of other jurisdictions, for years. There can be no doubt that today the accepted rule is that a fee simple absolute may be acquired. However, the immediate *460 problem before this court is: What was the status of the law in 1922 when the condemnation proceedings in question took place?
The first question which will be considered and which is of prime importance to this problem is, What kind of estate was acquired by the board of education when it acquired the premises in question from Emma Maslin in 1922?
This court feels and is in accord with the language of Justice Holmes, when a member of the Massachusetts court, in City of Newton v. Perry, 163 Mass. 319, 39 N.E. 1032 (Sup. Jud. Ct. 1895):
"There are no sacramental words which must be used in a statutory power to take and hold lands in order to give a right to take the lands in fee. Any language in the statute which makes its meaning clear is sufficient, and a very little more than `take and hold' has been held enough. Dingley v. Boston, 100 Mass. 544; Page v. O'Toole, 144 Mass. 303, 10 N.E. 851."
In Carroll v. Newark, supra, Mr. Justice Case, at page 327, said:
"The statute is to be read, not under the necessity of finding fixed phraseology, but to ascertain its intent, because this intent, clearly found, will prevail. No precise words are necessary in a statute to authorize the condemnation of a fee."
Vide analogously: Ramsey v. Leeper, 168 Okl. 43, 31 P.2d 852 (Sup. Ct. Okl. 1933); Martin v. Bethany, 199 Okl. 57, 182 P.2d 517 (Sup. Ct. Okl. 1947); McQuillen on Municipal Corporations, Eminent Domain, sec. 32:108.
However, it must appear, by some language or innuendo, that the statute shows that a fee simple title can be taken. Now, therefore, let us look at the statute under which the board of education derived the power to proceed with this condemnation action, and wherein did it condemn the property in question?
R.S. 18:6-24 Purchase, holding, sale and condemnation of property; appeal from award.
*461 "The board shall, in and by its corporate name, purchase, lease, receive, hold, and sell property, real and personal, and take and condemn land and other property for school purposes in the manner provided by law regulating the ascertainment and payment of compensation for property condemned or taken for public use. If either party shall feel aggrieved by any proceedings and award thereunder, such party may appeal in the manner provided by law for appeals from such proceedings and award."
The defendants herein contend that the statute in question, both expressly and by implication, provided for the condemnation and transfer of the fee simple title of any lands acquired under said statute R.S. 18:6-24, whereas the plaintiff contends that upon the abandonment of the premises by the board of education for "school purposes" the title to the premises reverted back to Emma Maslin and her successors in title.
Considering now the statute R.S. 18:6-24 
"purchase, lease, receive, hold, and sell property * * * and take and condemn land and other property for school purposes." (Italics mine.)
If we are to give to the words "for school purposes" the meaning clearly discernible from the statute itself, we will find the land was taken and condemned for the enlargement of School No. 11 in Jersey City.
This court, however, is of the opinion that the words "for school purposes" have no effect upon the estate acquired but are used merely to show the public use and then justify the right of eminent domain. Hopewell School Dist. v. Bush, 179 Ark. 316, 15 S.W.2d 985 (Sup. Ct. 1929). In that case the court was considering a statute identical with our own, in so far as it provided that the school districts could exercise the power of eminent domain and condemn land for "school purposes." There the court held that the quoted words were not a limitation upon the estate or interest taken in the lands condemned but upon the right to exercise the power of eminent domain. That construction this court follows, for no general power of condemnation of land does exist in a school board, and this court feels, with *462 certainty and after consideration, that the words "for school purposes" as stated in R.S. 18:6-24 were meant to be a necessary designation of a public use to authorize the exercise of eminent domain.
I am also of the opinion that the statutory word "take" authorized the taking of a fee simple absolute.
In In re Brooklyn Battery Tunnel Plaza, 186 Misc. 603, 62 N.Y.S.2d 303 (Sup. Ct. 1946), Mr. Justice Lockwood speaking of the New York Constitutional restrictions as to "No person shall be deprived of life, liberty or property without due process of law," and "Private property shall not be taken for public use without just compensation," said 62 N.Y.S.2d at p. 308:
"The right to `take' private property means the right to take not only the legal title, but also the physical possession of the property. It would be an empty gesture to take title to property for a public use without the right to possess and develop it for the public use."
True, it has been held that the word "take" does not necessarily impart the taking of real estate in fee, or by absolute title, but is often used when an easement only is intended but the statute wherein it is placed and the subject to be taken must be considered and analyzed. Harback v. Boston, 10 Cush. 295 (Mass. 1852).
As I have found, authorities dealing with eminent domain and more particularly condemnation of property for school purposes are few and of a general nature, and often inconsistent.
In 10 R.C.L., Eminent Domain, section 78, page 89, it is provided:
"It is well settled that when land is taken for the public use, unless the fee is necessary for the purposes for which the land is taken, as for example when land is taken for a school-house or the statute expressly provides that the fee shall be taken, the public acquires only an easement."
No authority is cited relative to the school house but are merely the expression of the writer's conclusions. The aforesaid *463 rule is to be found also in 18 Am. Jur., Eminent Domain, section 115, page 741.
However, in 24 R.C.L. Schools, section 31, page 582, we find it stated:
"As is the usual rule in cases of eminent domain, land so taken for school purposes does not vest the fee in the district, but only the right to use and occupation of the land for school purposes." Citing the case of Lazarus v. Morris, 29 Pa. Co. Ct. R. 505.
I consider this case a leading case, which is referred to in several varied jurisdictions. It involves the construction of an act wherein condemnation of a site for school purposes was made and the act authorized the school director "to use and occupy the same for the purpose of erecting thereon a school house." It was held by the County Court and the Supreme Court that the school director did not take a fee simple.
In comparing the words as used in the Lazarus case and the words of our own statute (R.S. 18:6-24), that is to say, comparing "to use and occupy the same" and "purchase, lease, receive, hold, and sell property, real and personal, and take and condemn land," it seems to me that there is a marked difference in the language employed, as between the case cited and the statute, to such a degree that a different conclusion might be drawn from the intention of each statute as it stands.
Nevertheless, the court has not based its decision upon the statute, R.S. 18:6-24, standing alone, but has sought to ascertain the legislative intent behind the numerous statutes dealing with the powers, duties, limitation, etc., of the school boards.
When statutory provisions are in pari materia, we must gather the intention and the sense of the law from its object, the nature of the subject matter, and the whole of the context. Goff v. Hunt, 6 N.J. 600 (1951).
Reference is now made to two statutes in quest of such intention:
*464 R.S. 18:5-25: "A board of education may sell or dispose of any of its real estate, or rights or interests therein, which cease to be suitable or convenient for the use for which they were acquired or which are no longer needed for school purposes, whether such real estate or rights or interests were acquired by purchase or through condemnation proceedings. The purchaser shall acquire title to the property so sold free from any use or purpose for which it may have been acquired by the board."
Also:
R.S. 18:6-16: "The title to school property, real and personal, previously acquired by the district, or by any previous body for school purposes in the district, or in the municipality in which the district is situated, or by anybody in such municipality, and the title to all property to be acquired for school purposes in the district shall vest in the board incorporated under the provisions of this chapter."
It seems to me from these two statutes, it is clear and plain, free from any ambiguity or doubt, that the Legislature intended that a fee simple absolute be taken by the board when condemning property for "school purposes."
R.S. 18:6-16 aforesaid states "Title * * * shall vest in the board." Can it be said that such words, in conformity with the intention of the Legislature, only intended an easement, and that under no circumstances could a fee simple absolute vest in the board? This court does not think so. It believes that the Legislature's words in regard to the various statutes dealing with the board's power to "take," "hold" and "sell" property are free from any ambiguous intent, and clearly state the legislative intent.
It seems to me, in the absence of express words authorizing or directing that a fee simple absolute be taken, that the Legislature could not express any clearer intention to acquire a fee simple title through and by such condemnation proceedings.
It is fundamental that land may be condemned for school purposes. Wendel v. Hoboken, 75 N.J.L. 70 (Sup. Ct. 1907), affirmed 76 N.J.L. 499 (E. & A. 1908). It is equally clear that such taking for school purposes is for a *465 public use. Bd. of Education v. Harper, 191 N.Y.S. 273 (Sup. Ct. 1918).
The authorities as the court understands them, submitted by the plaintiff in support of her contention, are relative to the acquiring by condemnation by a public utility, of an easement or right of way.
I consider that the following authorities are of great import in disposing of the present problem:
Binder v. Jefferson County, 224 Ky. 143, 5 S.W.2d 903 (Ky. Ct. App. 1928), wherein the statute under which the condemnation took place, is analogous to the various statutes authorizing the New Jersey boards of education to "take," "hold" and "sell" property, and speaking of the statute authorizing condemnation proceedings, where the court, 5 S.W.2d at page 904 said:
"To our minds its terms are so plain and unambiguous as to be entirely free from doubt."
Proceeding, 5 S.W.2d at page 905, the court said:
"The 1888 act (substantially the same as our statutes dealing with the corresponding authority) by its very terms prescribed for the acquisition of a fee-simple title by the trustees of common school districts, and, as if to emphasize that intention, it provided that such trustees might sell and dispose of the old site; which evidently could not be done unless a fee-simple title was held by them. There is no difference made in the statute with reference to authority to sell the schoolhouse lot between an acquired title by condemnation proceedings and one acquired by contract inter parties."
In discussing the terminology "for school purposes" 5 S.W.2d at page 905, the court says:
"`for school purposes' which, it is insisted, had the effect to create at most only a defeasible fee in the trustees and provided for a reverter to the prior owners of the lot or their heirs when the property ceased to be used as a site for a schoolhouse. In the absence of a statute, we are convinced that no such right of reverter would be created by the use of such language when the acquired title was upon a valid and sufficient consideration."
*466 In the instant case the sum of $13,600 was paid by the board of education under the condemnation award.
Also in 5 S.W.2d at page 906, the court said:
"In the Fuquay case (Fuquay v. Hopkins, 58 S.W. 814) in construing similar language, and which it was insisted debased the otherwise conveyed absolute fee, we said that the language was employed, not with the intention of rendering the fee conditional, but were descriptive of the nature of the use for which the trustees had selected the land."
In Hopewell School v. Bush, 179 Ark. 316, 15 S.W.2d 985 (Sup. Ct. Ark. 1929) the sole question presented for determination was whether a school district, in exercising the right of eminent domain, condemning lands for school purposes, acquires the entire interest, the fee in the lands condemned or only the right to its exclusive use for such purposes so long as it may be so used, there the court held:
"The interest in the property to be taken or condemned in this proceeding was expressly stated to be the fee, and no lesser estate would be sufficient to satisfy the purpose of the taking  a site for the school building  and the price to be paid or the compensation for the land condemned was the full market value thereof for all purposes; and the court erred in not making an order condemning the said land for school purposes and vesting the title thereto, the entire interest, the fee, in the school district in accordance with the statute. See 15 Cyc. 1020, and 20 C.J. 1223, § 583.
The words `for school purposes' in the statute are not a limitation upon the interest or estate taken in the lands condemned, but upon the right to exercise the power of eminent domain."
In the subject matter of the instant suit, the fee was impliedly transferred when the sum of $13,600, in 1922 the true market value therefor, was paid for the premises in question to Emma Maslin and has been retained by her from that date. There is nothing in the record to indicate that there was any opposition to the said award in the condemnation proceedings, nor were there any proceedings taken to protest thereafter that the property was not used for the purpose for which it was condemned, even though it was subsequently sold at public sale held under R.S. 18:5-25 *467 and R.S. 18:5-26. This leads this court to the conclusion that the fee simple absolute was the estate intended to be conveyed by the parties.
I consider the obiter dictum in the case of Summerill v. Hunt, supra, wherein it is stated, at p. 837:
"It appears to be the settled law that a fee simple absolute cannot be acquired by condemnation."
However, I believe that the rule as stated in the Summerill case is the true rule to be applied to the facts and circumstances in that particular litigation. This rule prior to the New Jersey Constitution of 1947 has its application in right of way cases relating to street railway or public utility condemnation proceedings.
However, in the case under consideration it would seem to me to be an erroneous application of the intention of the Legislature in regard to the taking of lands by condemnation for "school purposes" and, in addition, would not be in accord with the prevailing opinion of our sister states under similar circumstances.
It is therefore this court's opinion, as I have already indicated, that the intention of the statutes aforementioned was to authorize the acquisition of a fee simple absolute by the condemnation proceedings in question, and that the parties to the proceedings in 1922 intended to transfer the fee simple to the property in question, and that the fee simple absolute was transferred to the defendant, Board of Education of Jersey City.
Judgment will be entered accordingly, and order may be presented.