CARPENTER S. BUCK AND OTHERS v. CITY OF WINONA
AND OTHERS.
A. PERRY PHILIPS AND ANOTHER, INTERVENORS.

135 N. W. (2d) 190.

May 7, 1965—No. 39,724.

*Hale, Skemp, Hanson, Schnurrer & Skemp, T. H. Skemp, Leonard, Street & Deinard, Benedict Deinard,* and *George Reilly,* for appellants.

*George M. Robertson, Jr.,* City Attorney, and *Roger Brosnahan,* Special Assistant City Attorney, for respondent defendants.

*Streater & Murphy* and *Leo F. Murphy, Jr.,* for respondent intervenors.

ROGOSHESKE, JUSTICE.

Plaintiffs, as taxpayers, appeal from judgments refusing to enjoin defendants from performing an agreement to sell and convey the city of Winona's interest in a portion of its public park property to intervenors for the purpose of constructing and operating a motel and filling station.

As the case comes to us, the determinative question presented is a question of law based upon only a part of the unchallenged findings of the trial court.

The question is whether the city council of Winona has authority to agree to sell and convey by deed its interest in a part of its public park property, acquired by condemnation in 1906 for park and parkway purposes, to private interests for commercial uses.

The park property in question is a 4.4-acre tract located on the southerly shore of Lake Winona. It is a part of a 10-acre park tract called the Huff Street site, which area is a part of Lake Park comprising an area extending completely around the shore of Lake Winona. The somewhat triangular 4.4-acre tract is isolated from the rest of Lake Park by Huff Street on the east, a 4-lane highway on the south, and a drainage ditch on the west. From its intersection with Huff Street, the highway runs northwesterly and meets the shoreline of the lake a short distance westerly of the drainage ditch. The city acquired its interest in the Huff Street site by condemnation in 1906. The judgment in the condemnation proceeding provided:

"* * * [T]he said described land shall become the property of the City of Winona for park and parkway purposes, and be held and controlled by the said City through the agency of its Board of Park Commissioners for park and parkway purposes, and shall be and remain the property of the said City of Winona for such purposes forever."

The city has a total of 2,027 acres of park lands, of which 492.24 acres are improved and developed for park purposes. All of the park property is controlled and managed by the city's board of park commissioners. The tract in question is marshy, wet land, grown up with trees and vegetation. It has not been improved or developed as an

active park area, and there has been no material change in the character of that portion of the lakeshore for the past 50 years. The property south and west of the tract consists of park property and a cemetery. There are no residences in the immediate vicinity. The nearest residences are to the east of Huff Street facing the east shore of Lake Winona approximately 800 feet away. All of the plaintiffs who live north of the Huff Street site are at least 1,500 feet, measured in a direct line, from the tract. In the past, the city has sold other park lands along the lake, reserving a strip along the shoreline to control access.

After consideration of the possibility of disposing of the tract, the board of park commissioners on September 23, 1963, passed a resolution setting forth that it had no plans to develop the property because of its swampy condition and recommending that the city make up to 5 acres available for the construction of a motel. After the property had been appraised at $7,500, the city council voted to grant an option to purchase the 4.4 acres at the appraised value to intervenors upon condition that within a specified time they construct and equip a "Holiday Inn franchised Motel, complete with the necessary Commercial Buildings and adjoining Service Station" at a cost of not less than $400,000. The option agreement, subsequently executed, also provided that the city would convey "a good and marketable title in fee simple" free of all encumbrances except zoning ordinances, and that the agreement is subject to a determination that the city "owns the land in fee simple" and "has the power and authority to sell and convey it." Notwithstanding the absence of a reservation in the written agreement, intervenors have orally agreed to release a strip along the shoreline back to the city to enable it to control access to the lake.

Before exercising the option granted, intervenors made application to have the Huff Street site rezoned. In accordance with the provisions of the city charter and zoning code, and after published notice and a hearing as therein provided, the council, by a two-thirds vote of all the members, adopted an ordinance reclassifying the 10-acre Huff Street site from "R-1, One Family Residence District, to B-1,

Neighborhood Business District." The court found, upon disputed evidence, that this rezoning was not arbitrary or in violation of plaintiffs' constitutional rights but was a reasonable exercise of the power vested in the council, and that because of the elevation of the adjacent highways and the nature of the subsoil, it was not economically feasible to use the property for residential purposes.

Following these actions by the council, plaintiffs instituted this action seeking a judgment (1) declaring the option agreement invalid; (2) declaring the ordinance under which the property was rezoned invalid; and (3) enjoining the city from attempting to enforce the option agreement or to enforce the zoning ordinance.

At trial, the court was confronted with many fact issues raised by the pleadings, all of which were resolved against plaintiffs. Since the sufficiency of the evidence is not challenged on this appeal, we take it to be established, as the court found, that the amount of the developed and undeveloped park property of the city is in excess of its present and foreseeable needs; that the 4.4-acre tract is no longer needed for any city purposes; that the sale price is fair and reasonable; that the land is not suitable for residential purposes and that its use for commercial purposes will have no adverse effect on the value or enjoyment of plaintiffs' and adjoining property and will not constitute a public or private nuisance; and finally, that the actions taken to sell and convey the city's interest in the property served the best interests of the public and were not, as plaintiffs claimed, motivated by bad faith or a desire to serve private interests.

The emphasis placed upon the foregoing issues at trial, upon which plaintiffs primarily based their claims to the relief prayed for, quite likely misled the court to believe and to find that the issue concerning the nature of the city's interest and its alienability did not need to be determined. It was not until plaintiffs' motion for amended findings or a new trial that the court was made aware of the significance of this issue. At the hearing thereon, plaintiffs contended that the city did not hold a fee title but only an easement to be "used for park purposes forever," and that the city was disabled from releasing its interest by reason of "its obligations as a trustee" or "lack

of legal power otherwise." Without modifying previous findings (except to incorporate intervenors' agreement to release a 10-foot strip along the shoreline), the court in a memorandum made a part of its order determined that the city's interest was an easement for park purposes rather than a fee, but that such an interest in the land would qualify as "real estate" which the city by its charter was empowered to sell when the council in its discretion determined that it is "no longer needed for city purposes." Relying on language in Headley v. City of Northfield, 227 Minn. 458, 35 N. W. (2d) 606, the court also concluded that the city did not become a trustee of the property for public use because its interest was not, as in Headley, acquired by dedication, but by condemnation. Although on appeal plaintiffs have challenged the court's decision in other respects, the emphasis of their argument before us squarely focuses upon the narrow issue presented. Since this issue is decisive, all other questions raised will be reached only if the city's interest is such that it can be relinquished by a conveyance.

■■■ The nature of the interest in lands acquired by a municipality for public use through the exercise of eminent domain is to be determined by the language of the statute authorizing such taking. As said in Fairchild v. City of St. Paul, 46 Minn. 540, 543, 49 N. W. 325:

"* * * As the legislature is the sole judge of the public necessity which requires or renders expedient the exercise of the power of eminent domain, so it is the exclusive judge of the amount of land, and of the estate in land, which the public end to be subserved requires shall be taken."

Where the statute neither expressly nor by implication grants the right to take an estate in fee simple, "only such an estate or interest can be taken as is necessary to accomplish the purpose in view, and, when an easement is sufficient, no greater estate can be taken."[1]

The city acquired the Huff Street site in 1906 by condemnation. Defendants do not dispute that the proceedings were taken pursuant

---

[1]Fairchild v. City of St. Paul, 46 Minn. 540, 544, 49 N. W. 325, 326.

to G. L. 1903, c. 293,[2] which granted cities of between 10,000 and 50,000 inhabitants the power, through their boards of park commissioners, to acquire lands for public parks and parkways by condemnation or otherwise. The board of park commissioners of Winona also used this same authority in 1906 to acquire by condemnation another parcel of land on the shore of Lake Winona. A question concerning the interest thereby acquired was presented in Reed v. Board of Park Commrs. 100 Minn. 167, 110 N. W. 1119. Consistent with the rule announced in the Fairchild case, the court held that the city did not acquire the fee, but only an easement for park purposes. In construing the statute, the court stated (100 Minn. 170, 110 N. W. 1120):

"The right to take the fee is not expressly granted by this statute, nor is it conferred by fair implication. It is not necessary that the board should hold the fee of the land to enable it 'to thereafter hold and control, and from time to time lay out, alter, improve, operate and maintain such lands for public parks and parkways.' The easement acquired is perpetual, and is broad enough to enable the board to do whatever is necessary for the operation and maintenance of a park or parkway, and this is all that the necessities of the case require."

In our opinion, that construction of the authorizing statute governs in this case and compels the conclusion that the city's interest which is here sought to be conveyed is limited to an easement for park and parkway purposes.

■ Plaintiff contends that such an interest is not alienable. Although we would not be disposed to hold that the city charter[3] prohibits the sale of any real estate acquired by the city through condemnation for park and parkway purposes under the established facts, we need not reach that question. The limitation upon its authority to sell stems from the nature of the interest it received by condemnation rather than from the absence of any express or implied legisla-

---

[2]Substantially the same as Minn. St. 448.09, et seq.
[3]Winona City Charter 1924, c. 4, § 15 (Sp. L. 1887, c. 5, c. IV, § 15).

tive grant of power. That interest was a right to use the land for park and parkway purposes, and obviously the city cannot convey more. Not only is the interest less than the fee promised to be conveyed by the option agreement, but we believe it inconceivable that a municipality could convey to a private person an easement devoted to public purposes. Unlike a private easement appurtenant to adjoining land, it is "a privilege or liberty, open to the community,"[4] of the same character as a highway easement, which clearly could never be used except for a public highway. When acquired, the city paid for an easement to be used for park purposes, and upon release of its right to use the land for those purposes, the land must revert to the fee owners.

Undoubtedly because such an interest is not capable of being transferred, municipalities are usually empowered to relinquish their rights to use lands for streets or public grounds by vacation. The city appears to possess such power under its charter, whereby the council is vested with power "by ordinance, passed by an affirmative vote of two-thirds of all its members, to vacate and abolish any street, alley, road or public ground" upon proceedings initiated by a petition, followed by notice and hearing.[5] While park property is not expressly mentioned, it would seem reasonable to imply that such property is comprehended by the words "public ground." In any event, no claim is made that any vacation proceedings were attempted. Clearly the actions taken by the council, including adoption of the ordinance rezoning the property before the city's interest was extinguished, cannot be regarded as a vacation proceeding. To do so would permit the council to exercise its power to relinquish the city's interest in the property by vacation without compliance with the specific procedure by which such power must be exercised. Furthermore, both defendants' and intervenors' answers alleged that the intervenors are the owners of the underlying fee. If this is true, even though the option agreement did not require the city to rezone, to regard those proceedings as amounting to a vacation, and thereby a release of the city's interest, would,

---

[4]City of Winona v. Huff, 11 Minn. 75 at 85 (119 at 136).
[5]Winona City Charter 1924, c. 4, § 11 (Sp. L. 1887, c. 5, c. IV, § 11).

in effect, permit the city to receive payment for the vacation, which would be repugnant to such proceedings.

Thus viewed, the city's attempt to relinquish its interest without compliance with required proceedings · exceeds the authority vested in the council by the charter, and plaintiffs have standing to object.[6] For the foregoing reasons, we must reverse and remand with directions to amend the findings and conclusions consistent with this opinion.

Reversed with directions.

___

[6]See, Kray v. Muggli, 84 Minn. 90, 86 N. W. 882, 54 L. R. A. 473.