Elon PICHE, et al., Appellants, Respondents,

v.

INDEPENDENT SCHOOL DISTRICT NO. 621, Respondent, Appellant.

Nos. C7–01–267, C3–01–394.

Court of Appeals of Minnesota.

Aug. 28, 2001.

Thomas W. Tuft, Valerie Downing Arnold, Thomas Tuft Law Offices, and Patrick J. Kelly, Kelly & Fawcett, P.A., St. Paul, for appellants-respondents Piche.

Eric J. Magnuson, Timothy J. Nolan, Kathy S. Kimmel, Rider, Bennett, Egan & Arundel, L.L.P., Minneapolis, for respondent-appellant Independent School District No. 621.

Joseph M. Finley, Keith S. Moheban, Leonard, Street and Deinard, P.A., St. Paul, for amicus curiae Minnesota Land Title Association and Minnesota Real Estate Services Association.

Susan L. Naughton, League of Minnesota Cities, St. Paul, for amicus curiae League of Minnesota Cities.

Joseph E. Flynn, Daniel J.S. Becker, Knutson, Flynn & Deans, P.A., Mendota Heights, for amicus curiae Minnesota School Boards Association.

Considered and decided by STONEBURNER, Presiding Judge, KALITOWSKI and PARKER, Judges.

## OPINION

EDWARD J. PARKER, Judge. *

Appellants-respondents Elon and Jane Piche (the Piches) petitioned the district court for a writ of mandamus ordering respondent-appellant Independent School District No. 621 to discharge two parcels of land, the first of which was acquired by eminent domain and the second by warranty deed. The district court found that the school district held a fee simple defeasible interest in both parcels limited to the public purpose of acquiring a site for a school; that the school district had abandoned its intent to use the land for a school site, thereby triggering the Piches' reversion in the second parcel, but that the Marketable Title Act barred their reversionary interest in the first parcel. The district court issued a writ of mandamus as to the second parcel. Both parties appealed. Because we hold that the school district acquired a fee simple absolute interest in both parcels, and in the alternative, that the Marketable Title Act bars the Piches' claim to the first parcel, we affirm in part and reverse in part.

## FACTS

In 1955, the Piches purchased 76 acres of land in Ramsey County. The school district subsequently obtained an interest in 19.3 acres of the Piches' land in two parcels.

In 1957, the school district exercised its power of eminent domain over the first parcel. The Piches opposed the condemnation, but the district court granted the

school district's petition. The district court's order stated: "[T]he estate acquired by the [school district] in said lands shall be fee title absolute for a school site for school building, playground and other anticipated education purposes." A panel of three commissioners determined the fair market value of the property, and the Piches appealed the award. The district court affirmed the determination of fair market value, and its final decree stated:

[The school district] now owns a fee title in said lands for the purpose of acquiring a school site for a school building, playground and other anticipated educational purposes, and to have and keep exclusive control of the same.

This final decree was properly recorded.

In 1964, under the threat of condemnation, the Piches sold the second parcel to the school district. The Piches provided the school district with a warranty deed, which states that the Piches convey the second parcel

[t]o have and to hold the same, Together with all the hereditaments and appurtenances thereunto belonging, or in anywise appertaining, to the [school district], its successors and assigns, Forever. And [the Piches], for themselves, their heirs, executors, and administrators, do covenant with the [school district], its successors and assigns, that they are well seized in fee of the lands and premises aforesaid, and have good right to sell and convey the same in manner and form aforesaid, and that the same are free from all incumbrances.

The school district paid the Piches $1,000 per lot in consideration for the second parcel.

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

The entire 19.3 acres has since remained undeveloped. The Piches have made numerous attempts to recover the land, but the school district declined. Recently, the school district began studying its facility needs. A facilities task force issued a master plan recommending that no new school buildings be built and that the 19.3 acres be sold to generate revenue.

In April 2000, the Piches petitioned the district court for a writ of mandamus ordering the school district to discharge the 19.3 acres pursuant to a reversion because the school district had abandoned its intent to use the land for a school site. The district court issued a writ of mandamus and order to show cause. The school district answered, and a hearing was set. Three days prior to the hearing, the school district passed a resolution naming the potential uses for the 19.3 acres as (1) a site for a performing arts/administrative center; (2) a site for replacement of several leased instruction sites and a district service center; or (3) a trade for a larger tract of land.

The district court denied the Piches' petition with respect to the first parcel and granted their petition with respect to the second parcel. The district court concluded that the language of the final decree recorded in Ramsey County was ambiguous and that the nature of the school district's interest in the first parcel was determined by the 1957 statute authorizing the taking. The court held that the school district had a defeasible interest in the first parcel limited to the public purpose for which it was condemned. The district court concluded that the school district had no intention of using this land for a school site and the Piches had a reversionary interest, but that the Marketable Title Act (MTA) barred their claim, which was made more than 40 years after the taking of their interest in the first parcel. The dis-

trict court concluded that by acquiring a warranty deed on the second parcel by threat of condemnation, the school district had constructively exercised its powers of eminent domain, and, like the first parcel, the school district held a defeasible fee interest in the second parcel. The court found that the MTA did not bar the Piches' claim to the second parcel, however, because the warranty deed had been executed in 1964, and the 40–year period in which to make a claim had not yet expired. The court found that mandamus, although an extraordinary remedy, was necessary on the second parcel.

The district court denied both parties' motions for amended findings. The Piches appeal the district court's finding that the MTA barred their claim to the first parcel. The school district challenges the district court's underlying finding that the school district had a defeasible interest in the first parcel and appeals the court's finding that absolute title was not conveyed on the second parcel. The two cases have been consolidated.

## ISSUES

I. Did the district court err in denying the Piches' petition for a writ of mandamus compelling the school district to discharge the first parcel, acquired through eminent domain proceedings in 1957?

II. Did the district court err in granting the Piches' petition for a writ of mandamus compelling the school district to discharge the second parcel, acquired by a warranty deed in 1964?

## ANALYSIS

### I.

■ The school district argues that the district court erred in finding that the school district had only a fee simple defea-

sible interest in the first parcel. The Piches argue the district court erred in finding that the Marketable Title Act (MTA) barred their claim because (1) the MTA does not apply; and (2) the district court interpreted the MTA in a manner that violates their Fifth Amendment constitutional rights. Statutory construction is a question of law, which this court reviews de novo. *Brookfield Trade Ctr., Inc. v. County of Ramsey*, 584 N.W.2d 390, 393 (Minn.1998).

### A. The school district acquired a fee simple absolute interest in the first parcel.

■ The Piches argue that the school district waived its right to appeal this issue by failing to request amended findings by posttrial motion. This court will generally not consider matters not argued and considered in the court below. *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn.1988). In its posttrial motion and memoranda, the school district did not argue specifically that it had acquired a fee simple absolute interest in the first parcel because it had prevailed on other grounds. Nevertheless, the issue had been previously briefed and argued before the district court, who considered the issue fully in making findings. The record is complete for a thorough review on appeal. *Cf. In re Estate of Magnus*, 444 N.W.2d 295, 297–98 (Minn. App.1989) (reviewing appealable legal issue raised in record of probate proceeding even though appellant decided to forego any postorder motions). Therefore, when the school district ultimately prevailed on the issue, we hold it need not have filed a notice of review or have raised the issue specifically in a posttrial motion to preserve the issue for appeal. *Cf. Andren v. White–Rodgers Co.*, 462 N.W.2d 860, 861

(Minn.App.1990) (finding that respondent who prevailed in district court need not file a "contingent" appeal to preserve right to seek a remand if district court's decision is reversed).

■ The school district argues that it obtained a fee simple absolute in the condemnation proceedings as to the first parcel. If the eminent domain proceedings vested the school district with a fee simple absolute interest in the first parcel, the Piches would not have a reversionary interest even if the school district had failed to use the land for the public purpose for which it was originally condemned. *See* Minn.Stat. § 117.18 (1953) (stating that if the interest described in the condemnation proceedings is a fee simple absolute, "the fee simple absolute shall be an estate without any right of reversion under any circumstances.").

In 1957, the district court granted the school district's petition for condemnation by an order stating:

> [T]he estate acquired by the petitioner in said lands shall be *fee title absolute* for a school site for school building, playground, and other anticipated education purposes.

(Emphasis added.) This court order directed the panel of commissioners to determine the fair market value of the interest acquired by the school district in the first parcel. The award of the commissioners was filed on May 17, 1957.[1] Following the Piches' appeal of this determination of fair market value, the court issued a final decree:

> [The school district] now owns a *fee title* in said lands for the purpose of acquiring a school site for a school building, playground and other anticipated edu-

---

1. Title passed on the date of filing the award of the commissioners. *See McRostie v. City of Owatonna*, 152 Minn. 63, 66, 188 N.W. 52, 53 (1922).

cational purposes, and to have and keep exclusive control of the same.

(Emphasis added.) The school district recorded only this final decree.

A government entity may acquire a fee estate by the power of eminent domain. *Volden v. Selke,* 251 Minn. 349, 355, 87 N.W.2d 696, 701 (1958); *Fairchild v. City of St. Paul,* 46 Minn. 540, 543, 49 N.W. 325, 325–26 (1891) (stating legislature has the power to expressly authorize a municipal corporation to acquire fee simple interest in land by condemnation). A "fee" is defined as: "An estate of inheritance without condition, belonging to the owner, and alienable * * *." *Black's Law Dictionary* 741 (4th ed.1957). The "[t]erms 'fee,' 'fee simple,' and 'fee simple absolute' are equivalent." *Id.* (citing *Boon v. Boon,* 348 Ill. 120, 180 N.E. 792, 794 (1932)). The state's fee interest "need not be granted in express terms, but it must clearly appear, either expressly or by fair implication." *Volden,* 251 Minn. at 356, 87 N.W.2d at 702 (quotation omitted); *see* Minn.Stat. § 117.18 (1953) (stating that any "right, interest, or estate in the property" taken through condemnation proceedings, "if greater than an easement, shall be specifically described in the proceedings * * *").

The Piches argue that the language in the final decree stating "for the purpose of acquiring a school site" implies that the school district's interest is limited to a fee simple defeasible. A mere statement of the purpose for which the property is to be used is not sufficient to create a defeasible fee. 2 George W. Thompson, *Thompson on Real Property* § 20.07, at 676 (David A. Thomas ed.1994); *see, e.g., Housing & Redev. Auth. of City of South St. Paul v. United Stockyards Corp.,* 309 Minn. 331, 332, 244 N.W.2d 275, 276 (1976) (finding that from the form of instruments, from evidence of intent in contemporaneous records, and from resulting avoidance of payment of property taxes, that limiting words "for municipal purposes" and "for a public park" were precatory). Nothing in the final decree expressly references an estate lesser than a fee simple absolute. Therefore, the final decree defining the school district's interest as a "fee title" is ambiguous because the term "fee" can refer to a defeasible fee or a fee simple absolute.

The Piches contend that the unique language in the statute authorizing school districts to acquire land by eminent domain for only one specific public purpose—to acquire a school site—limits a school district's interest in the land to a defeasible fee only for that public purpose. The nature of an interest in land acquired by a governmental entity for public use through the exercise of eminent domain is determined by the statute authorizing the taking. *Buck v. City of Winona,* 271 Minn. 145, 149, 135 N.W.2d 190, 193 (1965). The legislature is the sole judge of the extent of the estate which serves the public necessity. *Id.* (citing *Fairchild,* 46 Minn. at 543, 49 N.W. at 326). Where the statute does not expressly or by implication grant the right to take an estate in fee simple, the interest taken is limited to that necessary to accomplish the purpose and no greater estate may be taken. *Id.* (citing *Fairchild,* 46 Minn. at 543, 49 N.W. at 326). The 1957 statute provided:

When authorized by the voters at a regular meeting or election or at a special meeting or election called for that purpose, [school boards] *may acquire necessary sites for school houses, or enlargements or additions to existing school house sites, by lease, purchase, or condemnation under the right of eminent domain;* erect, lease, or purchase necessary school houses, or additions thereto; erect or purchase garages for district-owned school buses; and *sell or ex-*

*change school houses or sites and execute deeds of conveyance thereof.*
Minn.Stat. § 125.06, subd. 2 (1957) (effective until July 1, 1958) (emphasis added).[2]

■ The district court failed to consider that the statute in effect in 1957 gave school districts the authority to sell or exchange school houses or sites. If the language in the statute were interpreted to mean, as the Piches argue, that the school district could only acquire a fee simple defeasible interest in land condemned for the purpose of acquiring a school site, then the authority given to school districts to sell or exchange property would be superfluous; a defeasible interest would have been effectively unmarketable because the sale or exchange would trigger the reversionary interest. *See Glaser v. Minnesota Federal Sav. & Loan Ass'n,* 389 N.W.2d 763, 764 (Minn.App.1986) (stating that a title that may force the purchaser into litigation to remove defects is not marketable); *see also Consolidated Sch. Dist. v. Walter,* 243 Minn. 159, 163, 66 N.W.2d 881, 883–84 (1954) (explaining that with a determinable fee, the property reverts back to the grantor automatically when the property ceases to be used for the stated purpose). Whenever it is possible, no word, phrase, or sentence of a statute should be deemed superfluous. *Amaral v. St. Cloud Hosp.,* 598 N.W.2d 379, 384 (Minn.1999). We therefore refuse to interpret the school district's statutory authority to obtain land by the power of eminent domain to curtail its equally viable authority to sell or exchange land. We hold that the statute authorized the school district by implication to acquire fee simple absolute title, and the language in the final decree—"for the purpose of acquiring a school site"—merely demonstrates the

public purpose for which the first parcel was condemned.

The district court and the Piches relied on *Buck,* 271 Minn. 145, 135 N.W.2d 190 (1965), *Fairchild,* 46 Minn. 540, 49 N.W. 325 (1891), and *Wolfson v. City of St. Paul,* 535 N.W.2d 384 (Minn.App.1995), *review denied* (Minn. Sept. 28, 1995). In *Wolfson,* the City of St. Paul condemned an 80–foot strip in 1886 to create Lexington Avenue. 535 N.W.2d at 386. In 1902, the city condemned an additional 40 feet on each side for a grassy parkway. *Id.* In 1956, respondents asked the city to construct a parking lot to replace the 40–foot grass parkway. *Id.* In 1993, the city replaced the parking lot with a right-turn lane, and respondents instituted an inverse condemnation action. *Id.* The court found that respondents had a reversionary interest in the land condemned for the parkway because "[w]hen a governmental unit condemns land for a limited public purpose, the land reverts back to the fee owner if the property is no longer used for the public purpose." *Id.* at 387 (citing *Buck,* 271 Minn. at 151, 135 N.W.2d at 194).

*Buck, Fairchild,* and *Wolfson* are distinguishable because the states interest acquired by eminent domain in these cases was limited to a right-of-way easement. *See, Fairchild,* 46 Minn. at 544, 49 N.W. at 326 (stating "where the legislature has authorized the taking of land for the purposes of streets, without defining the estate that may be taken, or expressly authorizing the taking of the fee, it is held that only an easement can be taken"); *see, e.g., Buck,* 271 Minn. at 150, 135 N.W.2d at 193 (finding construction of authorizing statute compels the conclusion that the city's interest is limited to an *easement* for park and parkway purposes).

---

**2.** The district court cited a different statute, Minn.Stat. § 122.041, subd. 1 (1957), but that section, although nearly identical in wording to Minn.Stat. § 125.06, subd. 2, did not become effective until July 1, 1958.

Caselaw from other jurisdictions is persuasive. A New Jersey court determined that the legislature intended that a school district acquire a fee simple absolute interest when condemning property pursuant to the statute for "school purposes." *Valentine v. Lamont*, 20 N.J.Super. 454, 90 A.2d 143, 148 (1952). In *Valentine*, the court distinguished contrary authority that related to the condemnation by a public utility of an easement or right of way. *Id.* The Kansas Supreme Court similarly determined that a school district that had condemned property for use as a site for school buildings had acquired fee simple title, and the original landowner held no reversion if the school district sold the land or devoted it to other uses. *Board of Educ. of Unified Sch. Dist. 512 v. Vic Regnier Builders, Inc.*, 231 Kan. 731, 648 P.2d 1143, 1152 (1982). The Kansas court emphasized the particularly unjust result if the property were to revert back to the original fee owner because at the time of the condemnation the landowner was compensated for the full value of the land, as in this case. *Id.* If the land were to revert back, the landowner would obtain a "substantial windfall." *Id.* at 1153. The Kansas court relied on the policy of emphasizing the public importance of school lands "and their importance in providing a sound financial basis for the public schools." *Id.*

■ We hold that, absent clear language to the contrary in conveyance documents, the grantor retains a reversionary interest in land only when the statute does not authorize the taking of a fee-simple estate and the taking of an easement would satisfy the public purpose.[3]

## B. The Marketable Title Act bars a claim for reversion.

■ The MTA provides:

As against a claim of title based upon a source of title, which source has then been of record at least 40 years, no action affecting the possession or title of any real estate shall be commenced * * * to enforce any right, claim, interest incumbrance or lien founded upon any instrument, event or transaction which was executed or occurred more than 40 years prior to the commencement of such action, unless within 40 years after such execution or occurrence there has been recorded * * * a notice sworn to by the claimant * * *.

Minn.Stat. § 541.023, subd. 1 (2000). The purpose of the MTA is to prevent "ancient records from fettering the marketability of real estate." *Hersh Props., LLC v. McDonald's Corp.*, 588 N.W.2d 728, 734 (1999) (quoting Minn.Stat. § 541.023, subd. 5 (1998)). A "determination of title should be possible from an examination of documents in the chain of title recorded in the 40–year period preceding the search." *Id.* If a party fails to record notice of their interest within the 40–year statutory period, the unrecorded interests are subject to a conclusive presumption of abandonment. *Id.* (citing Minn.Stat. § 541.023, subd. 5 (1998)).

The Piches argue that the school district has no standing to invoke the MTA as a defense because the school district does not have a claim based on a "source of title" where the school district's interest in the first parcel is nonproprietary. "Source of title" is "any deed, judgment, decree, sheriff's certificate, or other instrument which transfers or confirms, or purports to transfer or confirm, a fee simple title to real estate." Minn.Stat. § 541.023, subd. 7

3. We note that Minn.Stat. § 161.44, subds. 1, 2 (1980), specifically provided that when an easement acquired by the state for highway purposes is no longer needed, it must first be offered for reconveyance to the previous owner.

(2000). Fee simple "title" includes defeasible fees, which are fee simple estates subject to a special limitation, condition subsequent, executory limitation, or a combination of restrictions. *Wichelman v. Messner*, 250 Minn. 88, 100, 83 N.W.2d 800, 813 (Minn.1957) (citations omitted). Even if the school district had acquired a defeasible fee interest in the first parcel, the school district would have a source of title and could invoke the MTA as a defense.[4]

■ The Piches rely on *Wichelman*, 250 Minn. at 105, 83 N.W.2d at 815–16, for the proposition that the MTA does not apply to the reversioner or remainderman.[5] *Wichelman* qualifies that "it would be unreasonable and inconsistent with the statute's purpose to include within the meaning of the word 'title' the term for years and the life estate." *Id.* This case is distinguishable because it involves neither a term for years nor a life estate.

The Piches argue that the final decree in this case is analogous to the Torrens registration in *Hersh*, In *Hersh*, the supreme court held that the source of title held by an owner of Torrens property is the certificate of title issued to that owner upon his or her acquisition of fee simple title. 588 N.W.2d at 737. The holding in *Hersh*, however, wholly depends on the "binding and conclusive nature of certificates of title under the Torrens Act." *Id.* at 736. The Torrens certificate of title was less than 40 years old, whereas in this case, the final decree was recorded more than 40 years earlier. *Id.* at 732.

> [I]t is clear that the legislature intended to require those owning interests in old conditions and restrictions which burden such ownership to record notice of the continued existence of such rights or permit extinguishment of them.

*Wichelman*, 250 Minn. at 105, 83 N.W.2d at 816. Therefore, the final decree in this case would not put title searchers on notice of all interests relating to the first parcel because the Piches did not record notice of their purported interest in the first parcel during the last 40 years. The interest in the first parcel is not analogous to a Torrens registration.

Finally, the Piches argue that because the MTA exempts persons in possession of property from being deprived of their interest in the property, the MTA should not apply. *See* Minn.Stat. § 541.023, subd. 6 (2000). The Piches have misconstrued the exemption. The MTA provides that the Act cannot be used against someone in possession of the property, but in this case the school district is *invoking* the MTA as a defense *against the Piches*, who are not in possession of the property.

## C. Application of the MTA is constitutional.

■ The Piches argue that application of the MTA against them violates their constitutional protections against governmental takings of private property for pub-

---

**4.** The MTA does not bar the Piches' claim to the second parcel, however, because the Piches have brought that claim within 40 years after execution of the warranty deed in 1964.

**5.** The Piches argue that because the MTA was not discussed in *Buck v. City of Winona*, 271 Minn. 145, 135 N.W.2d 190 (1965), or *Wolfson v. City of St. Paul*, 535 N.W.2d 384 (Minn. App.1995), *review denied* (Minn. Sept. 28, 1995), it should not apply here. Simply be-

cause these cases did not address this issue, however, does not mean that the MTA does not apply in similar cases. On the contrary, it suggests that *Buck* and *Wolfson* are not precedential regarding the applicability of a statute not addressed by the court. *See Nadeau v. Melin*, 260 Minn. 369, 375, 110 N.W.2d 29, 34 (1961) (stating "[a] decision must be construed in the light of the issue before the court").

lic use without just compensation. *See* U.S. Const. art. V; Minn. Const. art. I, § 13. "In evaluating challenges to the constitutionality of statutes, this court recognizes that the interpretation of statutes is a question of law." *In re Blilie,* 494 N.W.2d 877, 881 (Minn.1993) (citation omitted). "Minnesota statutes are presumed constitutional, and our power to declare a statute unconstitutional should be exercised with extreme caution and only when absolutely necessary." *In re Haggerty,* 448 N.W.2d 363, 364 (Minn.1989) (citation omitted). The Piches argue that by barring their claim through invocation of the MTA, they have been deprived of a claim for inverse condemnation. The Piches would not have a claim for inverse condemnation, however, because they have already received just compensation in the original condemnation proceedings. Any further compensation to them would constitute a windfall.

## II.

■ The school district argues that in an unambiguous warranty deed the Piches conveyed a fee simple absolute interest in the second parcel, and the fact that the deed was conveyed under a threat of condemnation is irrelevant.

■ "The effect of the deed is to be determined by the law of conveyancing and not by the law of condemnation." *Kendrick v. City of St. Paul,* 213 Minn. 283, 287, 6 N.W.2d 449, 451 (1942).

[C]onditions in a conveyance of real property, a breach of which by the terms of the deed work a forfeiture of the estate, are construed strictly against the grantor, and if doubt arises from the language of the instrument whether a forfeiture or reversion of the estate was

intended, it will be resolved in favor of the grantee * * *.

*Bruer v. Bruer,* 109 Minn. 260, 264, 123 N.W. 813, 814 (1909). In the absence of express language in the deed, a condition subsequent is not implied. *Dietz v. Dietz,* 244 Minn. 330, 333, 70 N.W.2d 281, 285 (1955); *see* Minn.Stat. § 507.38 (2000) ("When a deed purports to be an absolute conveyance but is made or intended to be made defeasible * * * the original conveyance shall not thereby be defeated or affected as against any person other than the maker of the defeasance * * * unless the instrument of defeasance is recorded in the county where the lands lie.").[6] The warranty deed executed by the Piches in 1964 unambiguously conveys their fee simple title without any language from which to imply that the grantors retained a reversion.

In executing a warranty deed, the Piches guaranteed that title would be free of all encumbrances. *See* Minn.Stat. § 507.21 (2000) ("Whoever conveys real estate by deed or mortgage containing a covenant that it is free from all encumbrances, when an encumbrance * * * appears of record to exist thereon, but does not exist in fact, shall be liable in an action of contract to the grantee * * * for all damages sustained in removing the same."). The Piches could have included in the deed explicit language retaining a reversionary interest. We hold that the Piches conveyed a fee simple absolute interest in the second parcel by an unambiguous warranty deed.

The district court relied on *Kendrick* for the proposition that when a warranty deed is acquired in conjunction with a condemnation proceeding, the state's interest in

---

**6.** Along with other amicus curiae briefs, the brief of the Minnesota Land Title Association and the Minnesota Real Estate Services Association was particularly helpful in discerning the law of conveyances.

the land is limited to the public purpose for which it was conveyed:

> Our conclusion that the city, by taking the warranty deed, acquired a fee-simple title does not mean that this title was an absolute or proprietary one which could not thereafter be lost or relinquished by abandonment of all public use. The title which the city so acquired was a qualified or terminable fee, a sovereign or prerogative title, which it, as an agency of the state, holds in trust for the city and which it can neither sell nor devote to a private use.

*Kendrick,* 213 Minn. at 288, 6 N.W.2d at 451–52 (finding no abandonment of public use). Similarly, the district court relied on *First American,* in which the court seemed to treat the state's interest in the land acquired for a highway by threat of condemnation as if the state had acquired the land through eminent domain proceedings pursuant to statutory authority. *First Am. Nat'l Bank v. State,* 322 N.W.2d 344, 346 (Minn.1982). As in *Wolfson* and *Buck, Kendrick* and *First American* are distinguishable because they involved a right-of-way easement and a specific statutory application (Minn.Stat. § 161.44 (1980)) respectively.

The school district argued alternatively that (1) the statute of limitations on defeasible estates, Minn.Stat. § 500.20, subd. 2a (2000), bars recovery; (2) the district court made improper factual findings; and (3) a writ of mandamus was an improper remedy. Because we hold that the Piches conveyed a fee simple absolute title in the second parcel to the school district, we decline to reach these issues.

## DECISION

The district court erred in finding that the school district had a fee simple defeasible interest in both parcels, and the district court erred in issuing a writ of mandamus on the second parcel. Alternatively, the district court did not err in refusing to issue a writ of mandamus on the first parcel because the MTA applies to bar the Piches claim.

**Affirmed in part, and reversed in part.**