## CITY OF BLOOMINGTON v. ARTHUR R. MUNSON AND OTHERS.

221 N. W. 2d 787.

May 24, 1974—No. 44543.

*Gary L. Gandrud,* City Attorney, and *Robert D. Heacock, Jr.,* and *Cynthia Hovden Albright,* Assistant City Attorneys, for appellant.

*Coulter, Nelson & Sullivan* and *V. Owen Nelson,* for respondents.

Heard by Sheran, C. J., and Todd, MacLaughlin, and McRae, JJ., and considered and decided by the court.

GORDON L. McRAE, JUSTICE.*

This is an appeal from an order of the district court denying a motion by the city of Bloomington to dismiss condemnation proceedings. Although the appeal is from an order which is not appealable as a matter of right,[1] we do consider the matter on the basis of discretionary review under Rule 105, Rules of Civil Appellate Procedure, in the belief that no purpose will be served in dismissing the appeal and thereby requiring the city to raise the same issues on appeal from the judgment. Cf. Fritz v. Warthen, 298 Minn. 54, 213 N. W. 2d 339 (1973).

The trial court's ruling was prompted by its interpretation of L. 1971, c. 595, § 30, which provides the effective date for the 1971 amendments to Minn. St. 1969, c. 117. We reverse for what we deem error in the construction of the cited law.

The city of Bloomington commenced separate condemnation proceedings against Arthur Munson and others on May 28, 1971, and against H. L. Nehls, Jr., and others on June 9, 1971. These acquisitions were to be part of a parks and open spaces program funded in large measure by the Department of Housing and Urban Redevelopment (HUD). The two proceedings were consolidated by order of the court on March 15, 1972. The award of the commissioners in the amount of $825,000, together with $300 for appraisal fees, was filed on March 29, 1973. No appeal from the commissioners' award was taken by either the city or respondent owners. However, because the award was approximately twice the amount budgeted for the land in question, on May 7, 1973, the city council adopted a resolution requesting HUD to approve deletion of the subject property from the parks and

---

*Acting as Justice of the Supreme Court by appointment pursuant to Minn. Const. art. 6, § 2, and Minn. St. 2.724, subd. 2.

[1] In re Acquisition of Easements for County Highway No. 16, 286 Minn. 528, 175 N. W. 2d 502 (1970); State, by Mondale, v. Ohman, 267 Minn. 138, 125 N. W. 2d 419 (1963).

open spaces plan and also unanimously voted to dismiss the condemnation proceedings. Thereafter on May 17, 1973, the city moved to dismiss the proceedings pursuant to Minn. St. 117.195 and Bloomington Home Rule Charter, § 9.04.

The charter adopted by the city of Bloomington in 1960 included a chapter covering eminent domain. However, this charter does not undertake to provide a detailed set of rules for condemnation proceedings.[2] It simply provides that the city shall be au-

[2] Chapter IX of the charter provides in part: "Section 9.01. Power to Acquire Property. The city may acquire, by purchase, gift, devise or condemnation, any property, corporeal or incorporeal, either within or without its corporate boundaries, which may be needed by the city for any public use or purpose. Easements including but not limited to slopes, fills, sewers, building lines, poles, wires, pipes and conduits for water, gas, heat and power may be acquired by gift, devise, purchase or condemnation in the manner provided by law.

"Section 9.02. Proceedings in Acquiring Property. The necessity for the taking of any property by the city shall be determined by the council and shall be declared by a resolution which shall generally describe such property and state the use to which it is to be devoted. In acquiring property by exercising the power of eminent domain, the city shall proceed according to the laws of this state, except as otherwise provided in this chapter.

"Section 9.03. Payment of Award. Whenever an award of damages is confirmed in any proceeding for the taking of property for public use by right of eminent domain, or whenever the court renders final judgment in any appeal from any such award and the time for abandoning such proceedings by the city has expired, the city shall, within 60 days of such final determination, pay the amount of the award or judgment of the court, as the case may be; and if not so paid, judgment therefor may be had against the city.

"Section 9.04. City May Abandon Proceedings. The city may, by resolution of the council at any stage of the condemnation proceedings or at any time within 30 days after the final determination thereof, abandon such proceedings as to all or any part of the property sought to be acquired and shall pay all reasonable costs and expenses thereof, including fees of counsel as determined by a court of competent jurisdiction."

thorized to acquire property by condemnation; that in so doing "the city shall proceed according to the laws of this state, except as otherwise provided in this chapter" (§ 9.02); that an award shall be paid within a specified time; and, with respect to abandonment, that—

"The city may, by resolution of the council at any stage of the condemnation proceedings or at any time within 30 days after the final determination thereof, abandon such proceedings * * *." Bloomington Home Rule Charter, § 9.04.

The city's motion to dismiss the proceedings was denied on the grounds that the charter could not be the basis for abandonment because its provisions relating to condemnation proceedings had been superseded by Minn. St. c. 117, as amended in 1971.

Prior to the 1971 amendments to c. 117 and at the time of the adoption of the Bloomington Home Rule Charter, Minn. St. 1969, § 117.01, provided in pertinent part as follows:

"The provisions of this chapter shall be considered supplementary to those provided by any municipality operating under a home rule charter and shall be available to all such municipalities even though a different procedure may be provided by local charter."

In 1971, § 117.01 was repealed and in lieu thereof Minn. St. 117.011 (L. 1971, c. 595, § 1) was passed on May 27, 1971. So far as here pertinent, § 117.011 provides:

"All bodies, public or private, who have the right of eminent domain, when exercising such right, shall do so in the manner prescribed by chapter 117, even though a different procedure may be provided by charter provisions, ordinance or statute, * * *."

The trial court held that § 117.011 made inapplicable the provisions of a city charter relating to condemnation and further held that § 117.011 was to be applied in this case by reason of the provisions of L. 1971, c. 595, § 30, which reads:

"This act takes effect September 1, 1971, and applies to eminent domain proceedings commenced on and after this date; provided, however, that the provisions of this act which allow life estate holders to receive moving or relocation expense payments are effective immediately upon the passage of this act and apply to any trial of an appeal in which a verdict has not been rendered, and to any proceeding in which a commissioners' award has not been entered as of the date of passage."

Although the instant case was commenced prior to September 1, 1971, the commissioners' award was not made until long after the effective date of the 1971 amendments. The trial court construed § 30 as making the 1971 amendments applicable to "any proceeding in which a commissioners' award has not been entered as of the date of passage." We do not agree with the construction placed on § 30. This section is reasonably, and we believe necessarily, to be construed as applicable only to those proceedings commenced on and after September 1, 1971, save only in one minor respect, and that is set forth in the portion of § 30 which follows the semicolon, namely, moving or relocation expenses for life estate holders. The provisions of amended c. 117 relating to this exception are to be effective immediately upon passage of the amending act and apply (1) to any trial of an appeal in which a verdict has not been rendered and (2) to any proceeding in which a commissioners' award has not been entered as of date of passage. In other words, we view the last portion of § 30 as a direction, to commissioners in those proceedings where an award has not been filed and to jurors in those proceedings where a verdict has not been returned, to include as an element of damages in the award or verdict some amount for moving or relocation expenses incurred by life estate holders. This construction of the statute finds support in City of Thief River Falls v. Swick, 296 Minn. 508, 207 N. W. 2d 356 (1973), and Chicago & Northwestern Ry. Co. v. City of Rochester, 331 F. Supp. 47 (D. Minn. 1971). As so construed, L. 1971, c. 595, § 30, does not make operative the provisions of Minn. St. 117.011 so as to repeal

the Bloomington charter provisions relating to condemnations commenced prior to September 1, 1971.

Respondents contend that even if the 1971 amendments to c. 117 are not applicable in this case, the city is nonetheless precluded from invoking the provisions of its charter relating to abandonment by reason of its failure to specifically "mention the City of Bloomington's Home Rule Charter in the Notices of Condemnation involved in the instant case." It is claimed that this failure requires that the matter of abandonment be governed only by Minn. St. c. 117. No authority is cited for such a proposition and no reason is offered as to why this result should follow from the city's failure to refer to its charter in the notices or petitions. We perceive no reason why it should have this effect.

Home rule charters are considered a part of the body of law governing the conduct of municipal affairs. See, State ex rel. Town of Lowell v. City of Crookston, 252 Minn. 526, 91 N. W. 2d 81 (1958). As such, respondents are charged with knowledge of the city's charter provisions. Thus, in McRostie v. City of Owatonna, 152 Minn. 63, 66, 188 N. W. 52, 53 (1922), which involved condemnation proceedings initiated under the provisions of a home rule charter, we said that "plaintiff must be held to know that the law gave the city the privilege to abandon the proceeding" in a situation where the city had abandoned condemnation proceedings in accordance with its charter. We do have in mind the language used in Pettingill Theatre Co. v. City of Minneapolis, 256 Minn. 266, 98 N. W. 2d 207 (1959), involving a condemnation pursuant to charter provisions. In that case we discussed the effect of an amendment to Minn. St. 1953, § 117.01, which served to make the provisions of c. 117 "* * * supplementary to those provided by any municipality operating under a Home Rule Charter * * *." We there stated:

"* * * To us it appears that the legislature intended by the amendment to authorize municipalities with charters governing eminent domain procedure to elect to proceed either under such charters or in the alternative under c. 117. This should not mean

that where a city has elected to act under its charter it is nevertheless subject to the terms and conditions of statutes which it elected not to follow." 256 Minn. 271, 98 N. W. 2d 211.

There is no intimation in this language that an election must be made at any particular time in the proceedings. Where there is a choice to be made between two different proceedings for condemnation—one under the charter and the other under c. 117—there may be sound reason for requiring the municipality to make an election at a time which will permit the affected landowners to act in accordance with the procedures applicable. However, this is not the situation in the present case, for the charter of the city of Bloomington did not provide a different procedure for condemnation. It expressly provided that in "exercising the power of eminent domain, the city shall proceed according to the laws of the state" (§ 9.02) except only in certain minor respects, one of which related to abandonment of proceedings. There was no reason for the city to make any election until the time came for payment of the award or the abandonment of the proceedings. Up until one of these two times, the city was proceeding under c. 117 not because of any election so to do but because its charter so provided. When an election became important, we find that it was sufficiently made by the city.

It is also argued that even if the charter provisions are controlling on the matter of abandonment, the city has failed to act within the time limit therein set forth. The charter provides for abandonment "at any stage of the condemnation proceedings or at any time within 30 days after the final determination thereof." Bloomington Home Rule Charter, § 9.04. It is respondents' position that there was a "final determination" when the commissioners made their award on March 29, 1973, and they argue that the city did not act to abandon within 30 days thereafter. They rely on State, by Lord, v. Myhra G. M. C. Truck & Equipment Co. Inc. 254 Minn. 17, 93 N. W. 2d 204 (1958). We agree that this case speaks to the question of what constitutes a "final determination" in condemnation proceedings, but we do not

agree that it supports respondents' position. In Myhra, this court did say:

"Clearly then the right to dismiss is contingent upon the finality of the commissioners' award. In the absence of appeal by either party the commissioners' award becomes final and possesses the same force and effect as a judgment when the time for appeal has expired. State ex rel. McFarland v. Erskine, 165 Minn. 303, 206 N. W. 447; Annotation, 121 A. L. R. 43." 254 Minn. 19, 93 N. W. 2d 205.

Likewise, under the charter, there is no basis for contending that a "final determination" would be any time prior to expiration of the time for appeal. Accordingly, we hold that there was a "final determination" in this case, both under the charter and under the statute as construed in Myhra, when the time for appeal from the commissioners' award expired, namely, 40 days after March 29, 1973, as provided in Minn. St. 1969, § 117.20, subd. 4, and that the city did, pursuant to its charter, act to dismiss within 30 days after this final determination.

In paragraph IV of the memorandum made a part of the trial court's order in this case, there is set forth the following:

"In view of the Court's holding, the question of whether there was a vesting of the parties' rights by use, control, occupancy and appropriation of the property by petitioner has been rendered moot. However, if it should become an issue, it is a fact question which will have to be decided on the merits or on a motion for summary judgment."

Thus we reverse and remand to the trial court for such further proceedings as may be required to resolve the issue referred to in paragraph IV of its memorandum.

Reversed and remanded.