No. 47,525

In the Matter of the Estate of Forrest Penn, Jr., Deceased; CLARENCE ALLEN PENN, *Appellant;* MARVISS L. PENN, *Appellee;* MANUEL PENN, Administrator; MARCUS F. PENN, a Minor.

(531 P. 2d 133)

Opinion filed January 25, 1975.

*Jerry G. Elliott,* of Foulston, Siefkin, Powers and Eberhardt, of Wichita, argued the cause, and *Robert M. Siefkin,* of the same firm, was with him on the brief for the appellant.

*Allyn M. McGinnis,* of El Dorado, argued the cause and was on the brief for the appellee.

*Wallace F. Davis,* of El Dorado, guardian *ad litem* for Marcus F. Penn, a minor, joined in the brief for the appellant.

The opinion of the court was delivered by

FOTH, C.: The issue in this case is whether a judgment of divorce is valid as between the parties when it is rendered in open court, with both parties present with counsel, and is noted on the court's trial docket, but no journal entry is filed and the clerk neglects to enter the judgment in the appearance docket. We hold that it is.

Forrest Penn, Jr., died intestate on August 20, 1973. Two days later the appellee, Marviss L. Penn, instituted this proceeding in the probate court of Butler county by filing her petition to be appointed administrator of his estate. She claimed to be his widow. In due course an answer was filed by the appellant, Clarence Allen Penn, and adult son of the deceased Forrest Penn by a previous marriage. Clarence denied that Marviss was his father's widow, alleging that she had been divorced from him on November 8, 1972.

On that day Marviss and Forrest had appeared with their attorneys in the district court of Butler county, before Judge Page W. Benson, for the trial of their divorce action. At the conclusion of the trial the judge announced that he was granting Marviss the divorce she had prayed for, and custody of the parties' minor child. The balance of the decree was taken under advisement. Judge Benson made the following handwritten entry in his trial docket:

"Nov. 8, 1972, Plft. appears in person and by atty Davis Carson. Deft. appears in person and by atty Allyn M. McGinnis. Plft. introduces her evidence which is duly corroborated by Gladys Owen. Plft. rests. Deft. introduces evidence in his behalf. Recess for lunch. Arguments made following lunch hour. Divorce to Plft. Custody of minor child to Plft. Div. of prop., child support, alimony, atty fees, etc., taken under advisement. /s/ Page W. Benson, Judge."

After the court's decision had been announced there was a discussion concerning exemptions for income tax purposes for the year 1972. Forrest's counsel (now Marviss' counsel) observed:

"I am not at all certain that he can claim Mrs. Penn's [exemption] at all *because the Court has now granted a divorce,* and the IRS is very clear—it's very clear, if you are not married on December 31, you cannot claim the party regardless of the percent of support you provide; but as to the children, that is probably different." (Emphasis added.)

From this we infer that there was no doubt in counsel's mind at the time as to the legal effect of the judgment which had just been rendered.

Nothing further had been done in the divorce case at the time Forrest died some eight months later. Judge Benson testified in this

proceeding that he had granted Marviss a divorce on November 8, 1972, and that he considered the divorce a final judgment, even though he did not direct the preparation of a journal entry and did not tell the clerk to enter the judgment in the appearance docket.

On this history the probate court in this case found that there had been a divorce granted on November 8, 1972, and that Marviss was not Forrest's widow. Accordingly it appointed Manual Penn, Forrest's brother, as administrator. Marviss, while agreeing to the appointment of the disinterested administrator, appealed the finding that she was not Forrest's widow.

The district court, hearing the case *de novo*, found that there had been no judgment of divorce. Although Judge Brazil gave no reason for this finding, it was presumably made because the judgment was not "entered" as required by K. S. A. 60-258. The trial court concluded that Marviss was still married to Forrest on the date of his death. Clarence Penn, the adult son, has appealed. He is joined in his brief by the guardian *ad litem* for Marcus F. Penn, the minor son of Forrest and Marviss.

We think the result reached below fails to give sufficient recognition to the distinction between the judicial act of rendering a judgment and the ministerial act of recording the judgment rendered. The distinction is universally recognized, and is discussed in 49 C. J. S., *Judgments,* §§ 100, 102, 106-9, 113, and in 46 Am. Jur. 2d, *Judgments,* §§ 52-57, 152-54, 158, 159.

In our cases we have many times observed the distinction, employing such language as, "A journal entry of judgment is not the judgment itself but merely purports to be a record of the judgment rendered." *Mathey v. Mathey,* 175 Kan. 446, 264 P. 2d 1058, Syl. ¶ 3. In that case the journal entry omitted reference to the alimony which had been awarded in the actual judgment rendered. We held it was proper to supply the omission by an order *nunc pro tunc.* A similar result was reached in *Tincknell v. Tincknell,* 141 Kan. 873, 44 P. 2d 212, where we observed (p. 876-7):

".  .  . A judgment is one thing. The record of a judgment is a different thing, and what purports to be the record of a judgment may or may not be correct. When the question of correctness of the record is raised, the court must determine the matter as any other question of fact, except that the court's own knowledge of what the judgment was may be utilized and may be conclusive."

A striking illustration of the use of the trial court's own knowledge to override the written record, to determine when a judgment had

been rendered and what it was, and to make the record speak the truth, is found in *Gates v. Gates,* 160 Kan. 428, 163 P. 2d 395. There the divorce action had been tried on June 4, 1943. The only record made at that time was the trial judge's notation in his trial docket that the "case" was being taken under advisement. Five months later the husband sought to introduce additional evidence bearing on the issues of divorce and child custody. The trial judge refused to receive such evidence because, regardless of the state of the record, he said he had rendered a judgment on those issues on June 4, and had taken under advisement only the matter of property division. That issue was resolved in November, 1944, and a journal entry covering the property aspects of the case was filed November 23, 1944. A journal entry of the judgment of June 4, 1943, granting the divorce, was finally filed on November 30, 1944.

On appeal this court reviewed at length our many cases holding that a district court has not only the power but the duty to make its records conform to the truth, so that the record will accurately reflect the judgment actually rendered. By analogy, it was found that the erroneous entry in the judge's trial docket was not controlling. He was entitled to rely on his personal recollection as to what judgment he had rendered and when he had rendered it. As to the delay in filing a journal entry, the court said:

"The fact a journal entry of judgment is not filed until long after a judgment is rendered does not abrogate the judgment nor does its validity or effect remain in abeyance until such journal entry is filed or placed upon the record." (Syl. ¶ 2.)

The failure of the clerk to journalize the 1943 judgment was likewise found to be of no significance, the court quoting *Kinkel v. Chase,* 102 Kan. 275, 169 Pac. 1134, Syl. ¶ 1:

"The omission of the clerk to perform the ministerial duty of recording a judgment does not destroy the judgment, nor does its validity or effect remain in abeyance until it is formally entered on the journal."

(Cf. also, *Phelps Dodge Copper Products Corp. v. Alpha Construction Co.,* 203 Kan. 591, 455 P. 2d 555.)

The result in *Gates* was that the judgment of divorce was effective and binding on the parties as of the date it was rendered (June 4, 1943) despite the lack of a contemporaneous journal entry or clerk's notation. Under the statutes then in effect a notice of appeal filed 17 months after that judgment was rendered was too late, even though it might have been timely measured by the date the

journal entry was filed, and was timely insofar as the judgment relating to property division was concerned.

Which brings us to the function of our present statute, K. S. A. 60-258, which now prescribes the manner in which a judgment shall be "entered." Such "entry" is in the appearance docket, a chronological history of each case which the clerk is required to keep by K. S. A. 1974 Supp. 60-2601. Basically, 60-258 details three ways in which a judgment is "entered." The first is by the clerk, without direction, on a jury verdict. The second is by the clerk, forthwith upon its rendition, by direction of the judge. In either of these instances the clerk's notation "shall constitute the entry of judgment, and no journal entry or other document shall be required to render the judgment effective." (K. S. A. 60-258 [b].) The third method, most commonly employed, is entry by a settled "journal entry or other document," filed with the clerk. Under this method, *filing* constitutes the "entry" of the judgment, and "it shall not be effective before such filing." (Ibid.) The clerk's duty in this last type of case is to "note" in the appearance docket the fact of filing and a "brief abstract of the nature" of the judgment. In the first two the clerk actually "enters" the judgment by making the notation.

We have most recently examined this statute, in the context of a divorce case, in *Mentzer v. Mentzer,* 212 Kan. 539, 512 P. 2d 320. In that case the trial judge had made a trial docket minute much like the one here, granting a divorce and dividing the property, but reserving the allocation of debts to an agreed journal entry. No journal entry was filed but the clerk, unlike the clerk in this case, noted the judge's minutes in the appearance judgment despite the absence of a specific direction to do so. It was contended that in doing so the clerk acted as a mere volunteer, that there was therefore no judgment of divorce, and that the parties were therefore still married.

This court first took note of and adhered to our cases holding that an entry made by the clerk without direction cannot constitute the entry of a judgment. (*Guerrero v. Capitol Federal Savings & Loan Ass'n,* 197 Kan. 18, 415 P. 2d 257; *Corbin v. Moser,* 195 Kan. 252, 403 P. 2d 800; *Roe Village, Inc. v. Board of County Commissioners,* 195 Kan. 247, 403 P. 2d 970; *Urban Renewal Agency v. Reed,* 211 Kan. 705, 508 P. 2d 1227.) The underlying rationale of such cases is that the rendition of judgments is a judicial function, to

be performed by judges and not by clerks. In recording them a clerk is performing a ministerial function "under the direction of his court." (K. S. A. 1974 Supp. 60-2601.)

But this general principle was held to be inapplicable under the circumstances in *Mentzer*. The entry in the trial docket by the district judge, we said, "was sufficient *in and of itself to constitute a direction that judgment be entered* on the appearance docket in conformance therewith." (212 Kan. at 542. Emphasis added.) We also observed: "As we read the statute, there is no requirement that separate written directions be given the clerk, although such might be the better practice. In form and content, *the minutes of the court were tantamount to a direction that judgment be entered forthwith.*" (Id., pp. 542-3. Emphasis added.) The result was that there was a valid judgment of divorce, which was unaffected by the reservation of decision on one phase of the case.

Here, of course, the clerk did not note the judgment on the appearance docket. Should this make any difference? We think not. If, as we held in *Mentzer*, the judge's minutes were "tantamount to a direction that judgment be entered forthwith" then the clerk was under a positive duty to make such an entry. The clerk's failure to perform this ministerial duty "as between the parties to the judgment, cannot be said to bind either party to his prejudice." (*Phelps Dodge Copper Products Corp. v. Alpha Construction Co.,* supra, Syl. ¶ 6.)

In this case there is no doubt that a judgment of divorce was "rendered" on November 8, 1972. The judge testified to it; his minutes show it. As to the divorce and custody, the minutes are in the present tense, not in the future. Even counsel who is now asserting that there was no divorce, asserted at the time—in no uncertain terms—that the parties had been divorced. As we see it, counsel's position then was correct; his position now is erroneous.

We do not, by our holding in this case, mean to detract from the importance of the "entry" of a judgment in the appearance docket. As to third parties what is reflected in that docket is of vast importance: It is the official record of the case, and when relied upon may well be controlling. As between the parties, "entry" of the judgment is significant in establishing the timeliness of post-judgment motions and notices. But the statute does not say and we are unwilling to hold that the clerk's failure to perform his duties

should have the effect of nullifying the trial court's solemn judicial act of rendering judgment.

The stake in this case is a widow's one-half of a sizeable estate. We can easily conceive of a divorce granted in the late forenoon, with a clear and specific direction to the clerk to enter the judgment forthwith. While the clerk is at lunch and before the judgment is "entered," the husband is struck by a truck and killed. Surely the divorced wife cannot claim a widow's share simply because the clerk lunched before writing.

We conclude that the divorce of November 8, 1972, was good as between the parties, and that appellee Marviss Penn was not the wife of Forrest Penn, Jr. at the time of his death.

The judgment is reversed.

APPROVED BY THE COURT.