The CITY OF MAPLEWOOD, etc., Petitioner, Respondent,

v.

John J. KAVANAGH, et al., Appellants,

County of Ramsey, Respondent-Below.

No. C7–81–832.

Supreme Court of Minnesota.

May 6, 1983.

John E. Daubney, St. Paul, for appellants.

Lais, Bannigan & Kelly and John F. Bannigan, Jr., Maplewood City Attys., St. Paul, for respondent.

KELLEY, Justice.

Appellants, the respondents in an eminent domain proceeding commenced by the City of Maplewood (City) to condemn land for public park purposes, appeal from an order of the Ramsey County District Court granting the City's motion to dismiss the condemnation petition after a jury had assessed damages by verdict, but before entry of judgment. We reverse.

Early in 1980, the City of Maplewood commenced proceedings to condemn certain unimproved real property owned by the appellants. In due course, commissioners were appointed by the Ramsey County District Court to ascertain the damages the appellants would sustain as a result of the taking. After extensive hearings, the commissioners filed their report with the court, awarding appellants damages in the aggregate amount of $137,920. The landowners, appellants here, appealed to the Ramsey County District Court. The City did not cross-appeal. On Thursday, April 23, 1981, the jury returned a verdict awarding damages to appellants in the amount of $270,000. Judgment was not entered on the verdict on that day nor on Friday, April 24, 1981. On Monday, April 27, 1981, the court ordered that judgment be entered, but granted the City's motion for a 30-day stay of entry. During the pendency of the stay, the City moved to dismiss the condemnation action,[1] which motion was granted by the court on July 8, 1981. Appellants timely appealed to this court.[2]

In this appeal, we are asked to determine at what point in a condemnation proceeding the condemnor is barred from abandoning the condemnation and dismissing the proceeding. Appellants contend that the condemnor is barred from dismissing after a district court jury has rendered its verdict establishing damages. Respondent argues that the condemnor may dismiss at any time before entry of judgment. To that argument, appellants reply that Minn.R. Civ.P. 58.01[3] requires the clerk to enter judgment on the jury verdict "forthwith," and that Minn.Stat. § 117.185 (1982)[4] provides that judgment "shall be entered upon

---

1. During the stay, on May 7, 1981, the city council, City of Maplewood, adopted a resolution directing the city attorney to dismiss the proceedings in the district court because the jury verdict exceeded the acquisition budget for the park.

2. The trial court's order granting dismissal was summarily affirmed by this court on March 2, 1982. By order dated April 19, 1982, we granted rehearing and oral argument and asked that certain issues be briefed by the parties.

3. Minn.R.Civ.P. 58.01 reads insofar as applicable:

> Unless the court otherwise directs * * * judgment upon the verdict of a jury * * * shall be entered forthwith by the clerk; but the court shall direct the appropriate judg-

ment to be entered upon a special verdict or upon a general verdict accompanied by answers to interrogatories returned by a jury pursuant to Rule 49 * * * and the judgment is not effective before such entry.

4. Insofar as applicable here, Minn.Stat. § 117.185 (1982) reads:

> Judgment *shall be entered* upon the verdict or decision, fixing the amount of damages payable to the several parties concerned and the terms and conditions of the taking and, until reversed or modified in a direct proceeding begun for that purpose, the judgment shall be binding upon the petitioner and all other parties thereto and upon their respective successors and assigns. (emphasis added)

the verdict," and that since the clerk failed to enter the judgment "forthwith" or ever to enter the judgment as the statute requires, the condemnor should not be able to take advantage of the clerk's failure to enter judgment by thereafter dismissing the proceedings.

We have previously noted that "the authorities are in hopeless conflict" as to when the condemnor loses its right to abandon condemnation proceedings. *County of Hennepin v. Mikulay,* 292 Minn. 200, 210, 194 N.W.2d 259, 265 (1972).[5] Generally, the rule in Minnesota has been that the condemnor cannot deprive the landowner of a vested right by abandonment of the proceedings. *Id.* at 212, 194 N.W.2d at 266. The difficulty is in determining when the reciprocal rights of the parties have vested. *Id.* If no timely appeal has been taken from the commissioners' report, or if judgment has been entered in the appeal action in district court, the rights of the parties clearly have vested. *State, by Lord v. Myhra G.M.C. Truck & Equipment Co.,* 254 Minn. 17, 93 N.W.2d 204 (1958).[6] However, we noted in *Myhra* that the "vesting" rule is not absolute, and that the condemnor's right to terminate proceedings may be lost "before the expiration of the time to appeal or before entry of judgment where circumstances require it." *Id.* at 20, 93 N.W.2d at 206.

It has been suggested by counsel that this case could be resolved by determining whether the facts here presented constitute the sort of "special circumstances" referred to in *Myhra.* If such "special circumstances" existed, the condemnor would be barred from dismissal of the proceedings after rendition of the verdict but before entry of judgment. In briefs and oral arguments, however, appellants have urged that considerations of the realities of a condemnation

proceeding, considerations of judicial economy and governmental need, and the mandates of the Minnesota Rules of Civil Procedure and the eminent domain statutes support their contention that a condemnor may not dismiss after the rendition of the verdict. Accordingly, we examine appellants' contention by giving consideration to these factors.

Maplewood, as a public body, has a right to "take" private property for public purposes, here for a park, notwithstanding opposition to or objection by the landowner. Minn.Stat. ch. 117 and ch. 412 (1982). Once a court has determined that the "taking" is for public purpose, a finding that we note is rarely successfully contested, the only issue remaining is the determination of just compensation. Even before the filing of a petition in eminent domain, the landowner is frequently precluded from developing, improving or using the property because of the threat of condemnation.[7] After the filing of the petition, the effective use of the property is in "economic limbo" until the proceedings have been completed. *See* 6 *Nichols on Eminent Domain* § 26.45 (Rev. 3d ed. 1981). It is not at all unusual for months or years to elapse until final determination.

For example, in this case the order granting dismissal of the condemnation petition was signed on July 8, 1981, almost a year and a half after the filing of the petition. Even though Maplewood paid to appellants 75% of the commissioners' award pursuant to Minn.Stat. § 117.155 (1982), during this period appellants were precluded from economically developing the property. The existence of the proceeding cast a pall over any prospective sale or lease of all or part of the property. The landowners likewise incurred expenses for attorneys, witnesses, appraisers, and other litigation

---

**5.** *See also Independent School District No. 273 v. Gross,* 291 Minn. 158, 167, 190 N.W.2d 651, 657 (1971); 6 *Nichols on Eminent Domain* § 26.42, p. 26–274.1 (Rev. 3d ed. 1981).

**6.** *See also City of Bloomington v. Munson,* 300 Minn. 195, 221 N.W.2d 787 (1974); *Independent School District No. 273 v. Gross,* 291

Minn. 158, 190 N.W.2d 651 (1971); *Ervin v. Appleton,* 208 Minn. 436, 294 N.W. 418 (1940).

**7.** Because of the limited issue here involved, no trial record was filed in this court. Briefs of neither counsel indicate whether negotiation for direct purchase of the subject property took place prior to the filing of the petition.

expenses. Simultaneously, appellants were subject to continuing obligations to pay expenses incident to the property, including interest on indebtedness secured by the property, taxes and insurance. If the condemnor may abandon the proceeding after a full district court trial and after the jury has rendered a verdict, and if it chooses to do so, there is only a possibility that the landowner will receive any reimbursement for litigation costs,[8] and only slight likelihood he will receive any consequential damages.[9] Meanwhile, at any time after the filing of the petition, the condemnor may abandon.

In an eminent domain proceeding, the options available to the parties are heavily weighted in favor of the condemnor. First of all, it knows through the use of discovery, the landowner's estimate of value and at what figure the landowner's appraisers will value the property. It can take a gamble before the court-appointed commissioners that the award will be less than the demand made by the landowner. After the award and after an appeal is taken to the district court, it likewise knows what the landowner claims. At the trial, the condemnor and its attorney can evaluate the testimony of the value witnesses for both parties. Observation of the demeanor of the witnesses, analysis of the qualifications of the expert value witnesses, weighing of the foundations for the witnesses' opinions, and a notation of the apparent acceptance of the value testimony by the jury all give the condemnor and its attorney an opportunity to abandon the proceeding prior to rendition of the jury verdict, if, from the

foregoing, they conclude the risk that the jury's award will exceed what the condemnor is willing to pay for the property is too great.

Respondent contends that the rights of the parties should vest following a jury trial only after entry of judgment. It concludes that public policy requires the cost of public improvements to be ascertained before it can finally be determined that it is advisable to undertake the project. This argument has appeal, but in our view is outweighed by the unfairness to the landowner, especially when the condemnor and its attorney have the foregoing options. If the jury verdict is beyond the condemnor's expectation, it has available to it post-trial motions seeking judgment notwithstanding the verdict, a new trial or, perhaps, remittitur. The landowner, however, cannot at any step "abandon" the proceedings. He is usually a reluctant party to the proceeding. His only option is either to accept the commissioners' award or, if he has appealed from the award, to dismiss the appeal and take what he considers to be an inadequate compensation for the forceful taking of his property.

We must likewise consider the problem of judicial economy. The trial court in this case was aware of the problem when it noted that allowing abandonment after a district court jury verdict gives to the condemnor the advantage of dismissing the petition in order to obtain a new trial when it is dissatisfied with the jury verdict. Since the doctrines of res judicata and collateral estoppel both require the existence

**8.** Minn.Stat. § 117.175, subd. 2 (1982) provides:
The court *may, in its discretion,* after a verdict has been rendered on the trial of an appeal, allow as taxable costs reasonable expert witness and appraisal fees of the owner, together with the owner's reasonable costs and disbursements. No expert witness fees, costs or disbursements shall be awarded to the petitioner regardless of who is the prevailing party. (emphasis added)
It is clear this statute contemplates reimbursement only for those out-of-pocket expenses of landowners directly incident to proof of the measure of compensation or in preparation for the actual taking of the property.

*State, by Head v. Savage,* 255 N.W.2d 32, 38 (Minn.1977).

**9.** Such damages, if recoverable at all, must be sought in a separate action by the landowner. An action to recover them would require proof either that a "taking" had occurred or that the condemnor's action had been with unreasonable delay or had been taken in bad faith. *Minneapolis Board of Park Commissioners v. Johnson,* 274 Minn. 506, 144 N.W.2d 770 (1966). Also, the doctrine of governmental immunity might prevent recovery. *See, e.g., Barmel v. Minneapolis-St. Paul Sanitary District,* 201 Minn. 622, 277 N.W. 208 (1938).

of a *final* judgment, subsequent condemnation proceedings of the same property would not be barred. *See Staples v. Zinn,* 302 Minn. 149, 152, 223 N.W.2d 415, 417 (1974) (res judicata); *Ellis v. Minneapolis Commission on Civil Rights,* 319 N.W.2d 702, 704 (Minn.1982) (collateral estoppel). A judgment is not "final" until it has been entered. Minn.R.Civ.P. 58.01; Restatement (Second) of Judgments § 13 comment (b) (1980). Accordingly, the subsequent commencement of another condemnation proceeding would not be barred. Landowners could be harrassed and forced to expend more time and money. The workload of the courts might be needlessly increased. *See, e.g.,* Vestal, *Rationale of Preclusion,* 9 St. Louis Univ.L.J. 29, 31–33 (1964). To hold that a condemnor can dismiss after verdict but before entry of judgment would tend to turn the process into something that resembles a gambling game rather than a rational dispute-resolving proceeding.[10]

Some states have attempted to control multiple and successive condemnation actions by conditioning the condemnor's right to institute further proceedings on a showing that abandonment of the initial proceedings was done in "good faith." *See, e.g., Commonwealth v. Fultz,* 360 S.W.2d 216, 221 (Ky.App.1962); *Virginia Manor, Inc. v. City of Sioux City,* 261 N.W.2d 510, 515 (Iowa 1978); 27 Am.Jur.2d, *Eminent Domain* § 459 (1966). Minnesota has not adopted such a rule. In passing, we note that the existence of such a rule does not eliminate the economic disadvantage of the landowner because of the continual threat of further attempts at condemnation, plus the possibility of further litigation should the condemnor attempt to re-commence the process.

■ Maplewood's theory is that the jury's award amounts to no more than an "offer" to sell the affected property which the condemnor is free to accept or reject. Admittedly, some jurisdictions accept this view. *See, e.g., Huntsville Independent School District v. Scott,* 483 S.W.2d 344, 347 (Tex.Civ.App.1972). Upon consideration, we conclude that the City's "offer" theory is neither acceptable as a matter of contract law nor consistent with our condemnation statutes and the rules of civil procedure. In a condemnation proceeding, the landowner is not offering to sell the affected property. The condemnor proposes to take it from him. The jury's verdict establishes the price the condemnor must pay in order to do so. Under such circumstances, in our view it is conceptually improper to characterize the jury's verdict as an "offer."

Both our condemnation statute (Minn. Stat. § 117.185 (1982)) and Minn.R.Civ.P. 58.01 mandate entry of judgment on the verdict. The statute provides that judgment *"shall* be entered upon the verdict," (emphasis added) and that the judgment is binding "until reversed or modified in a direct proceeding for that purpose." The statute does not provide that judgment shall be entered at the condemnor's option, nor does it permit abandonment or dismissal after verdict. Minn.R.Civ.P. 58.01 provides that upon rendition of a general verdict "judgment upon the verdict of a jury * * * shall be entered *forthwith* by the clerk." (emphasis added) Because this rule is not inconsistent or in conflict with any of the provisions of Minn.Stat. ch. 117, it is applicable to eminent domain cases. Minn. R.Civ.P. Appendix A. Here, the clerk failed to perform this ministerial duty "forthwith."

■ While a majority of reported cases from other jurisdictions hold that as between the parties the judgment exists from the time the jury renders its verdict or the court acts, notwithstanding that it was not properly entered, *see, e.g., In re Estate of Penn,* 216 Kan. 153, 531 P.2d 133 (1975); *Jones v. Galbasini,* 134 Colo. 64, 299 P.2d 503 (1956); *Truelove v. Truelove,* 266

---

**10.** In a related area, the United States Supreme Court has disapproved of repeated litigation because it reflects "either the aura of the gaming table" or a "lack of discipline" on the part of the courts. *Blonder-Tongue Laboratories,* *Inc. v. University of Illinois Foundation,* 402 U.S. 313, 329, 91 S.Ct. 1434, 1443, 28 L.Ed.2d 788 (1971) (condemning relitigation of the validity of a patent).

S.W.2d 491 (Tex.Civ.App.1953); *Freeport Motor Casualty Co. v. Tharp,* 406 Ill. 295, 94 N.E.2d 139 (1950), Minn.R.Civ.P. 58.01 specifically provides that "judgment is not effective before such entry." Without dispute, had judgment been entered as mandated by the statute and had it been done "forthwith" as required by the rule, respondent could not have abandoned or dismissed the proceedings. In other words, the failure of the clerk to perform the ministerial duty of timely entering the judgment resulted in unfairness and prejudice to appellants because the delay afforded respondent the opportunity to apply for and be granted a stay of entry of judgment.[11] In other situations, we have recognized that "equity regards and treats that as done which in good conscience ought to be done." *Gilles v. Sprout,* 293 Minn. 53, 59, 196 N.W.2d 612, 615 (1972). Applying that maxim here, we are constrained to hold that the rights of the parties vested prior to respondent's motion for dismissal.

Accordingly, we hold that the rights of the parties to a condemnation action in district court vest at the time the jury returns its verdict. Thereafter, the condemnor may not dismiss the proceedings. Prior to the rendition of the verdict, the condemnor can move for stay of entry of judgment, and, if the motion is granted, its rights to pursue post-trial remedies will be preserved; but unless the trial court grants a new trial or otherwise modifies the verdict according to law, the rights of the parties vest upon rendition of the jury's verdict.

Reversed.

---

11. Where there is a general verdict, as here, it is unnecessary for the judge to order entry of judgment. Such an order is only necessary when there is a special verdict. *See* Minn.R.Civ.P. 58.01.